# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KURT DZIBELA,<br><br>        Plaintiff,<br><br>v.<br><br>BLACKROCK, INC., LAWRENCE FINK, and JOHN DOES 1-23, ABC Company 1-5.<br><br>        Defendants. | Case No. 3:23-cv-02093-PGS-JBD<br><br><br>**Motion Day: June 5, 2023** |

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ..................................................................1

II.   STATEMENT OF ALLEGED FACTS AND PROCEDURAL
      HISTORY ...............................................................................................3

      A.    Plaintiff's Employment Ended After He Violated BlackRock
            Policy...........................................................................................3

      B.    Procedural History........................................................................4

III.  LEGAL STANDARD ............................................................................4

IV.   LEGAL ARGUMENT............................................................................6

      A.    Plaintiff Fails to Allege Facts Sufficient to Create Plausible
            Claims of Discrimination Based on Color, Race, Perceived
            Disability, Gender, Sexual Orientation, Familial Status, or
            Predisposing Genetic Characteristics...........................................6

            1.    Race or Color Discrimination ...................................6

            2.    Perceived Disability Discrimination .........................9

            3.    Predisposing Genetic Characteristics Discrimination .............11

            4.    Gender and Sexual Orientation Discrimination......................12

            5.    Familial Status Discrimination .............................13

      B.    Plaintiff's Claim for Intentional Infliction of Emotional Distress
            is Legally and Factually Deficient. ...................................14

            1.    Plaintiff's IIED claim is duplicative of and preempted by
                  his LAD claims. ......................................14

            2.    Plaintiff alleges no factual support for his IIED claim............15

      C.    Plaintiff's NJDJA Claim Fails Because It is Based on Laws for
            Which There is No Private Right of Action.......................17

      D.    Plaintiff Fails to State Any Claims for Individual Liability. .............20

V.    CONCLUSION...........................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Cases**             **Page(s)**

*Aetna Health Inc. v. Srinivasan*,
   2016 WL 3525298 (N.J. Super. Ct. App. Div. June 29, 2016) .........................20

*Ashcroft v. Iqbal*
   556 U.S. 662, 678 (2009)...................................................................................4, 5

*Belfort v. Morgan Properties*, *LLC*,
   2018 WL 3201787 (D.N.J. June 29, 2018).........................................................15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................5

*Berutti v. Wolfson*,
   2023 WL 1071624 (D.N.J. Jan. 27, 2023)....................................................18, 20

*Bilinski v. Wills Eye Hosp.*,
   2016 WL 6247569 (E.D. Pa. Oct. 26, 2016), *aff'd in rel. part*, 760
   F. App'x 125 (3d Cir. 2019)................................................................................19

*Bowie v. Costco Wholesale Corp.*,
   2017 WL 3168985 (D.N.J. July 26, 2017) .........................................................16

*Browne v. Nat'l Collegiate Student Loan Tr.*,
   2021 WL 6062306 (D.N.J. Dec. 22, 2021).........................................................20

*Cicchetti v. Morris Cty. Sheriff's Off.*,
   194 N.J. 563 (2008) .............................................................................................21

*Cronin v. Booz Allen Hamilton Inc.*,
   2022 WL 3357869 (3d Cir. Aug. 15, 2022) .......................................................16

*Elansari v. Univ. of Pa.*,
   779 F. Appx. 1006 (3d Cir. July 17, 2019).........................................................19

*Excel Pharmacy Servs., LLC v. Liberty Mut. Ins. Co.*,
   825 F. App'x 65 (3d Cir. 2020)...........................................................................20

*Foy v. Wakefern Food Corp.*,
   2010 WL 147925 (D.N.J. Jan. 7, 2010)................................................................8

*Gaines v. United Parcel Serv., Inc.*,
   2014 WL 1450113 (D.N.J. Apr. 14, 2014) ......................................................15

*Groeber v. Friedman & Schuman, P.C.*,
   555 F. App'x 133 (3d Cir. 2014) ......................................................................8

*Hoag v. Brown*,
   397 N.J. Super. 34 (App. Div. 2007) ..............................................................21

*Iovanella v. Genentech, Inc.*,
   452 F. App'x 85 (3d Cir. 2011) .......................................................................13

*Johnson v. Mount Sinai Hosp. Grp., Inc.*,
   2023 WL 2163774 (E.D.N.Y. Feb. 22, 2023) ...................................................9

*Jorgenson v. Conduent Transp. Sols., Inc.*,
   2023 WL 1472022 (D. Md. Feb. 2, 2023) .......................................................10

*King v. Port Auth. of New York and New Jersey*,
   909 F. Supp. 938 (D.N.J. 1995) ......................................................................16

*Leggo v. M.C. Dean, Inc.*,
   2023 WL 1822383 (E.D. Va. Feb. 7, 2023) ......................................................9

*Mardini v. Viking Freight, Inc.*,
   92 F.Supp.2d 378 (D.N.J. 1999) .....................................................................15

*McKinley v. Princeton University et al.*,
   2023 WL 3168026 (D.N.J. Apr. 28, 2023) ......................................................12

*Metzler v. Am. Transp. Grp., LLC*,
   2008 WL 413311 (D.N.J. Feb. 13, 2008) .........................................................15

*Neitzke v. Williams*,
   490 U.S. 319 (1989) ..........................................................................................4

*Nguyen v. Quick Check, Store No. 129*,
   2013 U.S. Dist. LEXIS 176067 (D.N.J. Dec. 16, 2013) .............................5, 6, 8

*In re Orthopedic Bone Screw Prod. Liab. Litig.*,
   193 F.3d 781 (3d Cir. 1999) ............................................................................18

*Quarles v. Lowe's Home Centers, Inc.*,
  2006 WL 1098050 (D.N.J. Mar. 31, 2006) ...................................................16, 22

*Sangi v. Warren Hosp.*,
  2011 U.S. Dist. LEXIS 117463 (D.N.J. Oct. 11, 2011) .......................................7

*Santiago v. Warminster Twp.*,
  629 F.3d 121 (3d Cir. 2010) ...............................................................................8

*Shklyar v. Carboline Co.*,
  2022 WL 2867073 (E.D. Mo. July 21, 2022), *aff'd*, 2023 WL
  1487782 (8th Cir. Feb. 3, 2023) ........................................................................10

*Smith v. E. Greenwich Twp.*,
  519 F. Supp. 2d 493 (D.N.J. 2007), *aff'd*, 344 F. Appx. 740 (3d
  Cir. 2009), *as amended* (Nov. 3, 2009) ............................................................17

*Speaks v. Health Sys. Mgmt., Inc.*,
  2022 WL 3448649 (W.D.N.C. Aug. 17, 2022) ..................................................10

*Witherspoon v. Rent–A–Center, Inc.*,
  173 F. Supp. 2d 239 (D.N.J. 2001)...............................................................16, 17

**Statutes**

21 U.S.C. § 360bbb.........................................................................................17, 18

21 U.S.C. § 337.....................................................................................................18

N.J.S.A. § 10:5-5.............................................................................................11, 12

N.J.S.A. § 10:5-12...........................................................................................12, 13

New Jersey Declaratory Judgment Act.......................................................17, 20, 23

**Other Authorities**

45 C.F.R. § 46.101 ...............................................................................................19

45 C.F.R. § 46.116 ..........................................................................................18, 19

Federal Rule of Civil Procedure 12(b)(6) ............................................................4, 9

## I.     <u>PRELIMINARY STATEMENT</u>

Plaintiff Kurt Dzibela's employment ended in February 2022 because he refused to comply with BlackRock, Inc.'s policy requiring that employees be vaccinated against COVID-19, and after his request for an exemption from the policy was denied.  In response to his separation of employment for this lawful and legitimate reason, Plaintiff initiated this action, and has twice amended the complaint, yet his Second Amended Complaint still fails to state *any* viable claims against the Defendants.

Plaintiff's Second Amended Complaint adopts a "shotgun" approach by alleging in the most conclusory fashion that his employment was terminated for a litany of unlawful reasons.  But the fact is that Plaintiff has not alleged any facts that give rise to a plausible claim for relief under controlling Supreme Court authority.

First, the Court should dismiss Plaintiff's claims under the New Jersey Law Against Discrimination ("LAD") on the basis of color, race, perceived disability, gender, sexual orientation, familial status, and genetic characteristics because he has not alleged any facts to establish viable claims for any such discrimination.

Second, the Court should dismiss Plaintiff's claim for intentional infliction of emotional distress ("IIED") because it is preempted by his statutory discrimination claims and, in any event, ordinary allegations of employment discrimination do not give rise to such a claim.

Third, the Court should dismiss Plaintiff's declaratory judgment claim because the federal statute and regulation that Plaintiff alleges were violated by BlackRock's vaccine policy do not create any private right of action, as this Court held earlier this year when Plaintiff's counsel sued in his own name seeking to challenge this Court's COVID-19 protocols on an identical theory.

Finally, the Court should dismiss all claims against individual defendant Laurence Fink, BlackRock's Chairman and CEO, for the additional reason that Plaintiff does not (and cannot) allege that Mr. Fink did anything to him personally, and so there can be no individual liability. Given the lack of any action by Mr. Fink towards Plaintiff, his being named as an individual defendant is clearly an effort to grab headlines and harass BlackRock and Mr. Fink. The CEO of the world's largest asset manager with over $9 trillion under management and 20,000 employees should not be distracted from his mission of serving BlackRock's stakeholders to defend himself in a case challenging an individual's employment decisions for which he was completely uninvolved.

For all of these reasons, as set forth in more detail below, Defendants' motion should be granted, and the Second Amended Complaint should be dismissed in its entirety.

## II.  STATEMENT OF ALLEGED FACTS AND PROCEDURAL HISTORY[1]

### A.  Plaintiff's Employment Ended After He Violated BlackRock Policy.

Plaintiff alleges that he began working for BlackRock in 2015 as an equity finance trader.  Dkt. No. 1, Plaintiff's Second Amended Complaint ("SAC") ¶ 12. Plaintiff worked at the Company's office in Princeton, New Jersey, and "also worked from his home in New Jersey." SAC ¶ 9.  In October 2021, BlackRock implemented a "COVID-19 vaccine mandate" requiring employees to be vaccinated against COVID-19, absent an approved accommodation (the "Vaccination Policy").  SAC ¶ 27.  Plaintiff requested, but did not receive, such an accommodation. *See* SAC ¶¶ 29-35.  Plaintiff continued to refuse to take a COVID-19 vaccine, which resulted in the alleged termination of his employment pursuant to the Vaccination Policy, and his employment ended effective February 1, 2022.  SAC ¶¶ 39-40.  Plaintiff alleges that the Company ended his employment "because of its desire to force its employees to be injected with a so-called COVID-19 vaccine. . ."  SAC ¶ 31.

Plaintiff alleges that in January 2022, he was "given a reduced bonus from the prior year, although, upon information and belief, he had earned a larger bonus." SAC ¶¶ 36-37.  Plaintiff also alleges that his "termination, as well as his reduced

---

[1]  Defendants assume the truth of Plaintiff's allegations solely for purposes of this Motion.

compensation and benefits, was based in whole or in part, on" a laundry list of protected characteristics.  SAC ¶ 43.

### B. Procedural History

On March 14, 2023, Plaintiff commenced this action by filing a Complaint in the Superior Court of New Jersey, Monmouth County, Law Division.  *See* Dkt. No. 1.  Plaintiff subsequently filed an Amended Complaint on March 15, 2023, and filed the operative Second Amended Complaint on March 21, 2023.  *See* Dkt. No. 1.  On April 14, 2023, Defendants removed this action to the United States District Court for the District of New Jersey.  *See* Dkt. No. 1.

## III. <u>LEGAL STANDARD</u>

The purpose of Rule 12(b)(6) is to streamline litigation by dispensing with baseless claims that will result in needless discovery.  *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  When "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  To survive a motion to dismiss, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  A claim is plausible only when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009).

Although courts are generally required to accept factual allegations in a complaint as true and draw reasonable inferences in favor of the non-moving party, the Court is not bound by "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and the Court need not credit a Plaintiff's "legal conclusions." *Id.* "For example, the court is free to ignore legal conclusions or factually unsupported accusations which merely state that 'the-defendant-unlawfully-harmed-me.'" *Nguyen v. Quick Check, Store No. 129*, 2013 U.S. Dist. LEXIS 176067, at *7 (D.N.J. Dec. 16, 2013) (quoting *Iqbal*, 556 U.S. at 675).

In determining whether a plaintiff has satisfied this standard, courts must first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. After disregarding these conclusory allegations and threadbare assertions, a court should then accept as true only the remaining factual allegations and determine whether those allegations "plausibly give rise to an entitlement to relief." *Id.*

The claims in Plaintiff's Second Amended Complaint should be dismissed because Plaintiff does not allege sufficient facts to plausibly maintain any such claims.

## IV.  <u>LEGAL ARGUMENT</u>

### A.  **Plaintiff Fails to Allege Facts Sufficient to Create Plausible Claims of Discrimination Based on Color, Race, Perceived Disability, Gender, Sexual Orientation, Familial Status, or Predisposing Genetic Characteristics.**

The factual allegations in Plaintiff's Second Amended Complaint make clear that his employment ended as a consequence of his refusal to comply with the Vaccination Policy, after his request for an exemption was denied, allegedly "because of [BlackRock's] desire to force its employees to be injected with a so-called COVID-19 vaccine. . ."  SAC ¶ 31.  Plaintiff does not allege any facts sufficient to support any of his claims of unlawful discrimination.  Each of those bases is addressed in turn.

### 1.  *Race or Color Discrimination*

Plaintiff fails to plead facts sufficient to maintain a claim for race or color discrimination.  Plaintiff alleges that "[i]n 2018, at [an] [i]nternal quarterly earnings meeting, [Mr.] Fink, a white male, announced that there were too many white males in leadership positions," although Plaintiff does not allege that he was actually ever in such a leadership position, or how this alleged comment related to the termination of his employment *four years* later.  SAC ¶ 15.  Plaintiff alleges that thereafter, Mr. Fink and BlackRock began a campaign to "replace white male workers based on their race and color," although he does not provide any examples to support that

claim, nor does he allege that he was replaced with someone of a different race or color.  SAC ¶ 16.  Plaintiff alleges that "promotions within BlackRock became widely tied to criteria related to skin color and gender, sexual preference and not experience or performance," but again fails to provide any examples and does not claim that he was denied any promotions.  SAC ¶ 16.  Plaintiff also alleges that in 2018, management compensation became tied, in part, to "hitting 'Diversity, Equity and Inclusion' ('DEI') targets," but again, does not allege any facts as to how this resulted in the termination of his employment based on race or color rather than for failure to comply with the Vaccination Policy.  SAC ¶ 2.

These are precisely the type of boilerplate, conclusory allegations that are insufficient to state a plausible claim for relief.  *Sangi v. Warren Hosp.*, 2011 U.S. Dist. LEXIS 117463, at *7 (D.N.J. Oct. 11, 2011) ("Plaintiff appears to believe that pleading [that he received reduced compensation and was terminated] along with an allegation that Plaintiff is in a protected class is sufficient to state [his] claim.  It is not.").  These conclusory statements consist of "allegations that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010); *see also Nguyen*, 2013 U.S. Dist. LEXIS 176067, at *2 (noting that "the court is free to ignore . . . factually unsupported accusations").

A plaintiff's "subjective belief that [a protected category] played a role in these employment decisions . . . is not sufficient to establish an inference of discrimination." *Groeber v. Friedman & Schuman, P.C.*, 555 F. App'x 133, 135 (3d Cir. 2014) (affirming motion to dismiss discrimination claim where the plaintiff "present[ed] no discriminatory statements by [the employer] or evidence of discriminatory motive to support her allegations."); *Foy v. Wakefern Food Corp.*, 2010 WL 147925, at *4 (D.N.J. Jan. 7, 2010) (dismissing LAD discrimination claims because "[a] mere allegation that an adverse employment action was motivated by [a protected characteristic], without more, is exactly the type of broad conclusory allegation which the Supreme Court has found insufficient" to survive dismissal).

Plaintiff has not stated plausible claims for race or color discrimination, particularly where he has pled that BlackRock's motivation in enforcing its policy was "because of its desire to force its employees to be injected with a so-called COVID-19 vaccine. . ."  SAC ¶ 31.  There is no allegation that the Vaccination Policy, on its face or application, was in any way tied to employees' race, color, or any other protected category.  The Policy applied to all employees without regard to any of those factors.  The Court should dismiss the First and Second Counts for race and color discrimination.[2]

---

[2]     Plaintiff appears to have mislabeled the Second and Third Counts of his Second Amended Complaint.  In this Motion, Defendants will refer to the Second

## 2.  *Perceived Disability Discrimination*

In his Third Count, Plaintiff alleges that "Defendants perceived [Plaintiff] to be suffering with a disability based on. . . his status of being uninjected with the so-called COVID-19 vaccine."  SAC, Third Count, ¶ 2.  Courts faced with identical "perceived as disabled because unvaccinated" claims have consistently dismissed such claims under Rule 12(b)(6).  *See, e.g. Johnson v. Mount Sinai Hosp. Grp., Inc.*, 2023 WL 2163774, at *6 (E.D.N.Y. Feb. 22, 2023) ("The decision to vaccinate or not to vaccinate is a personal choice, while a disability under the ADA is not something a person chooses."); *Leggo v. M.C. Dean, Inc.*, 2023 WL 1822383, at *4-7 (E.D. Va. Feb. 7, 2023) (dismissing ADA claim of perceived disability due to unvaccinated status; "the allegation that [Defendant] regarded [Plaintiff] as having a disability of being perpetually infected with or susceptible to COVID-19 is implausible. [Defendant's] COVID-19 policy was generally applicable to all employees, and the company's decision to require all employees to attest to their vaccination status does not plausibly reflect a determination or belief that any of its employees are disabled or impaired."); *Jorgenson v. Conduent Transp. Sols., Inc.*,

---

Count as asserting race discrimination claims, and the Third Count as asserting perceived disability discrimination claims.  *See* SAC, Second Count, ¶ 2 ("Defendants discriminated against Mr. Dzibela. . . based on Mr. Dzibela's race."); SAC, Third Count, ¶ 2 ("Defendants perceived Mr. Dzibela to be suffering with a disability based on his medical status including, without limitation, his status of being uninjected with the so-called COVID-19 vaccine.").

2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023) (to survive dismissal, "a plaintiff must plausibly allege that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment," but "vaccination status is likewise not an impairment or an impediment to work-related tasks."); *Speaks v. Health Sys. Mgmt., Inc.*, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) ("Refusing to get a vaccine required by an employer is not itself an 'impairment' of any sort" but rather "reflects a personal choice"); *Shklyar v. Carboline Co.*, 2022 WL 2867073, at *5 (E.D. Mo. July 21, 2022), *aff'd*, 2023 WL 1487782 (8th Cir. Feb. 3, 2023) (dismissing perceived as disabled claim under the ADA, explaining plaintiff "alleges that, by implementing its COVID-19 policies and requiring that she comply with them, [Defendant] regarded her as having the disability of a contagious disease and as being substantially limited with impaired immune and respiratory systems. This conclusory allegation is simply implausible in light of the general applicability of [Defendant's] COVID-19 policies.").

Although these cases were decided under federal law, the analysis and the result are the same under New Jersey's Law Against Discrimination. These cases dismissed claims that an employee was perceived or regarded as disabled based on one or both of the following bases. First, the perceived disability claims failed because the employer could not be considered to have perceived anything about the

individual plaintiff merely by its application of a policy applicable to employees generally (as is the case here).  Second, the perceived disability claims failed because being unvaccinated is not a disability and, therefore, being perceived as unvaccinated does not amount to being perceived as disabled.  Both rationales apply here and support dismissal.  BlackRock could not have perceived Plaintiff to be disabled by application of its general Vaccination Policy.  Additionally, choosing to not become vaccinated is not a disability under the LAD's definition of disability and, therefore, being perceived as unvaccinated does not amount to being perceived as disabled.  *See* N.J.S.A. 10:5-5(q).[3]

This Court should join the consistent and overwhelming relevant authority and dismiss Plaintiff's Third Count alleging perceived disability discrimination.

### 3.    *Predisposing Genetic Characteristics Discrimination*

The Fourth Count, which alleges discrimination based on Plaintiff's "Predisposing Genetic Characteristics related to his vaccination status" (SAC,

---

[3] N.J.S.A. 10:5-5(q) ("'Disability' means physical or sensory disability, infirmity, malformation, or disfigurement which is caused by bodily injury, birth defect, or illness . . . and which shall include . . . any mental, psychological, or developmental disability, including autism spectrum disorders, resulting from anatomical, psychological, physiological, or neurological conditions which prevents the typical exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques.").

Fourth Count, ¶ 2), should be dismissed because there are no allegations that BlackRock made any decisions based on Plaintiff's genetic information.

The LAD prohibits employment discrimination based on "genetic information," which is defined to mean "information about genes, gene products, or inherited characteristics that may derive from an individual or family member." N.J.S.A. §§ 10:5-5(oo), 10:5-12(a). Being unvaccinated is unrelated to Plaintiff's genetic information, and being terminated for refusing to become vaccinated in accordance with a policy applicable to all employees fails to state a claim that Plaintiff was terminated based on his individual genetic information. *See McKinley v. Princeton University et al.*, 2023 WL 3168026, at *3 (D.N.J. Apr. 28, 2023) (dismissing GINA claims based on requirement to submit to COVID-19 testing; "Plaintiff fails to allege that Defendant terminated her employment due to her genetic information or that she was classified in a way that deprived her of employment opportunities due to her genetic information.").

The Court should dismiss the Fourth Count for "Predisposing Genetic Characteristics" discrimination.

### 4. *Gender and Sexual Orientation Discrimination*

Plaintiff fails to plead facts sufficient to maintain claims for gender or sexual orientation discrimination. The only allegation relating to gender or sexual

orientation is that "promotions within BlackRock became widely tied to criteria related to skin color and gender, sexual preference and not experience or performance." SAC ¶ 16. Plaintiff does not provide any examples, does not claim failure to promote, and otherwise provides no allegations to maintain plausible claims for gender or sexual orientation discrimination. The Court should dismiss the Fifth and Sixth Counts for gender and sexual orientation discrimination.

### 5.    *Familial Status Discrimination*

The Court should also dismiss Plaintiff's claim for familial status discrimination because that is not a protected class under the LAD and, in any event, Plaintiff does not plead any facts to support a claim that he was discriminated against based on familial status.

Initially, this claim should be dismissed because the employment provisions of the LAD (N.J.S.A. § 10:5-12) (as opposed to the housing provisions), do not include familial status among the protected categories. *Iovanella v. Genentech, Inc.*, 452 F. App'x 85, 87 (3d Cir. 2011) (affirming summary judgment on LAD claim for familial status discrimination; "[w]ith respect to employment practices, § 10:5–12(a) prohibits an employer from basing decisions on a host of suspect characteristics, including race, national origin, age, sex, and disability. Notably absent from the list of protected classifications, however, is familial status.") (citing *Bumbaca v. Twp. of Edison*, 373 N.J. Super. 239 (App. Div. 2004)).

13

Moreover, Plaintiff also does not allege any facts that could support such a claim.  He alleges that he has two disabled children and that BlackRock had provided him with a flexible work schedule (SAC ¶¶ 22, 42), but does not allege any facts that would make it plausible that his employment was terminated due to familial status rather than from his non-compliance with the Vaccination Policy.

The Court should dismiss the Seventh Count for familial status discrimination.

**B.    Plaintiff's Claim for Intentional Infliction of Emotional Distress is Legally and Factually Deficient.**

**1.    *Plaintiff's IIED claim is duplicative of and preempted by his LAD claims.***

Plaintiff's IIED claim, like each of his other claims, challenges his employment termination for failure to comply with the Vaccination Policy and alleges that "[s]uch acts purposely targeted [Plaintiff] for discrimination and with the threat that he would be forced to place his health at risk in order to maintain his job and career without reasonable justification or excuse."  SAC, Eighth Count, ¶ 3. Plaintiff's LAD claims preempt his tort claim for IIED.  It is well-settled that the LAD "preempts *any* supplemental common law tort action that is based 'on the same factual predicate.'"  *Gaines v. United Parcel Serv., Inc.*, 2014 WL 1450113, at *5 (D.N.J. Apr. 14, 2014) (quoting *Metzler v. Am. Transp. Grp., LLC*, 2008 WL 413311, at *4 (D.N.J. Feb. 13, 2008)).  Consistent with that principle, this Court has routinely dismissed common law claims based on the same employment-related

allegations underlying the plaintiff's LAD claims. *See, e.g.*, *Belfort v. Morgan Properties, LLC*, 2018 WL 3201787, at *10 (D.N.J. June 29, 2018) (granting summary judgment on IIED claims based on the same conduct as his harassment claims); *Metzler v. Am. Transp. Grp., L.L.C.*, 2008 WL 413311, at *4 (D.N.J. Feb. 13, 2008) (granting motion to dismiss negligence and IIED claims that were "based on the same operative facts as . . . claims under the [LAD]"); *Mardini v. Viking Freight, Inc.*, 92 F.Supp.2d 378, 384 (D.N.J. 1999) (granting motion to dismiss plaintiff's common law wrongful discharge claim for failure to allege facts distinct from her LAD claim, rendering wrongful discharge claim duplicative). Because Plaintiff's common law IIED claim is based squarely upon the same facts used to allege his statutory employment claims, it is preempted by the LAD and should be dismissed as to all Defendants.

## 2. *Plaintiff alleges no factual support for his IIED claim.*

Plaintiff also has not alleged an actionable IIED claim, which requires him to show that Defendants "(1) engaged in intentional conduct (2) that was extreme and outrageous (3) and was the proximate cause (4) of severe distress suffered by the plaintiff." *Quarles v. Lowe's Home Centers, Inc.*, 2006 WL 1098050, at *4 (D.N.J. Mar. 31, 2006).

Plaintiff only alleges that he requested an exemption from the Vaccination Policy, that his exemption request was denied, and then his employment was terminated for failing to comply with the Vaccination Policy.  SAC ¶¶ 27-29, 39.

"To establish extreme and outrageous conduct, a plaintiff must show conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Witherspoon v. Rent–A–Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001).  "[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery on an IIED claim."  *Cronin v. Booz Allen Hamilton Inc.*, 2022 WL 3357869, at *5 (3d Cir. Aug. 15, 2022) (affirming D.N.J. dismissal of IIED claims); *Bowie v. Costco Wholesale Corp.*, 2017 WL 3168985, at *6 (D.N.J. July 26, 2017) (collecting cases); *King v. Port Auth. of New York and New Jersey*, 909 F. Supp. 938, 943 (D.N.J. 1995) ("[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.") (citation omitted).

The Second Amended Complaint fails to allege any "extreme or outrageous conduct."  Instead, Plaintiff's claim is no more than a challenge to the decisions made regarding his employment. *Smith v. E. Greenwich Twp.*, 519 F. Supp. 2d 493,

513 (D.N.J. 2007), *aff'd*, 344 F. Appx. 740 (3d Cir. 2009), *as amended* (Nov. 3, 2009) (plaintiff failed to show extreme or outrageous conduct where she was subject to an internal investigation, found to have violated company policies, and suspended without pay); *Witherspoon*, 173 F. Supp. 2d at 242 ("Courts have routinely held that claims regarding employment decisions fail to state a claim for intentional infliction of emotional distress as a matter of law."). Plaintiff's IIED claim should be dismissed.

### C. Plaintiff's NJDJA Claim Fails Because It is Based on Laws for Which There is No Private Right of Action.

Plaintiff's Ninth Count seeks a declaration pursuant to the New Jersey Declaratory Judgment Act ("NJDJA") that the Vaccination Policy is "illegal pursuant to the Statute and/or the Regulation," that "all employees who purportedly were terminated due to the [Vaccination] Policy were wrongfully terminated," and "that the so-called COVID-19 vaccines are not safe or effective." SAC, p. 22. Plaintiff alleges that the Vaccination Policy violates 21 U.S.C. § 360bbb,[4] which is part of the Food, Drug, and Cosmetic Act ("FDCA"), and the Food and Drug Administration's ("FDA") informed consent requirement on human research studies, 45 C.F.R. § 46.116 ("informed consent requirement").[5]

---

[4] Incorrectly cited in Plaintiff's SAC, Ninth Count, ¶ 4, as "21 U.S.C. § 300bbb."
[5] Incorrectly cited in Plaintiff's SAC, Ninth Count, ¶ 5, as "45 C.F.R. § 45.116(b)(8)."

Neither FDCA Section 360bbb nor the FDA's informed consent requirement provide for a private right of action.  Plaintiff's counsel knows this because this Court recently dismissed his claims against then-Chief Judge Wolfson and Clerk Walsh challenging this Court's requirement that visitors be vaccinated against COVID-19 or show proof of a negative COVID-19 test to enter the courthouse. Addressing the declaratory judgment claim under the same statute and regulation at issue in this case, this Court[6] held that it is "well settled that the FDCA creates no private right of action" because "Section 337 of the FDCA dictates that all such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States." *Berutti v. Wolfson*, 2023 WL 1071624, at *5 (D.N.J. Jan. 27, 2023) (citation omitted); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 193 F.3d 781, 788 (3d Cir. 1999) ("It is well settled, however, that the FDCA creates no private right of action") (citing Second, Third, and Fourth Circuit authority holding the same).

Similarly, the FDA's informed consent requirement does not apply to the Defendants and does not provide a private right of action.  *See Elansari v. Univ. of Pa.*, 779 F. Appx. 1006, 1009 (3d Cir. July 17, 2019) (affirming dismissal of claim alleging violation of 45 C.F.R. § 46.116 on grounds that the defendant was not

---

[6] The case was decided by Chief Judge Brann from the Middle District of Pennsylvania, sitting by designation.

subject to the regulation and "that § 46.116 does not provide a private cause of action."); *Bilinski v. Wills Eye Hosp.*, 2016 WL 6247569, at *2 (E.D. Pa. Oct. 26, 2016), *aff'd in rel. part*, 760 F. App'x 125 (3d Cir. 2019) ("all claims asserted under the federal regulations regarding the 'Protection of Human Subjects' in research (45 C.F.R. §§ 46.101, 46.115, 46.116 and 46.117) are dismissed because the relevant statute does not provide a private cause of action"); *see also* 45 C.F.R. § 46.101 ("this policy applies to all research involving human subjects conducted, supported, or otherwise subject to regulation by any Federal department or agency that takes appropriate administrative action to make the policy applicable to such research . . . Institutions that are engaged in research described in this paragraph and institutional review boards (IRBs) reviewing research that is subject to this policy must comply with this policy.").

Consequently, Plaintiff cannot obtain declaratory relief based upon the relevant statute and regulation, which provide no private right of action. *Excel Pharmacy Servs., LLC v. Liberty Mut. Ins. Co.*, 825 F. App'x 65, 70 (3d Cir. 2020) ("[I]t is well settled that parties cannot bring a declaratory judgment action under a statute when there is no private right of action under that statute."); *Berutti*, 2023 WL 1071624, at *5 (dismissing federal Declaratory Judgment Act claims because "the FDCA creates no private right of action"); *Aetna Health Inc. v. Srinivasan*, 2016

WL 3525298, at *3 (N.J. Super. Ct. App. Div. June 29, 2016) (affirming dismissal of NJDJA claim where plaintiff did not have a private right of action under the relevant statute); *Browne v. Nat'l Collegiate Student Loan Tr.*, 2021 WL 6062306, at *4 (D.N.J. Dec. 22, 2021) (dismissing NJDJA claim, noting that the cited statute did not confer a private right of action and so the cause of action seeking a declaratory judgment thereunder failed to state a claim).

Plaintiff's NJDJA claim should be dismissed.

### D.    Plaintiff Fails to State Any Claims for Individual Liability.

Plaintiff's claims against Mr. Fink should be dismissed for all the same reasons set forth above.  In addition, Mr. Fink should be dismissed from the case entirely because Plaintiff does not – and cannot – allege that Mr. Fink had any involvement in decisions related to Plaintiff's employment.  Moreover, liability under the LAD, if any, falls squarely on the *employer* and Plaintiff does not, and cannot, allege that Mr. Fink employed him.  *Hoag v. Brown*, 397 N.J. Super. 34, 47 (App. Div. 2007) ("[t]he lack of an employment relationship between a plaintiff and a defendant will preclude liability under the LAD"). Consequently, there is no basis for individual liability.

Under the LAD, "individual liability of a supervisor for acts of discrimination . . . can only arise through the 'aiding and abetting'" theory.  *See Cicchetti v. Morris Cty. Sheriff's Off.*, 194 N.J. 563, 594 (2008). Such liability requires that an individual

engage in "active and purposeful conduct," that the individual "must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance," and "must knowingly and substantially assist the principal violation." *Cicchetti*, 194 N.J. at 594.  Even if Plaintiff had alleged an aiding and abetting theory against Mr. Fink, such claims would fail because there are no facts that could establish such liability.

In none of Plaintiff's causes of action asserted under the LAD does he allege any act by Mr. Fink that could remotely suggest that he aided and abetted wrongdoing.  Instead, Plaintiff alleges that the Defendants, including Mr. Fink, affirmatively engaged in wrongful conduct and discrimination.  *See* SAC, First Count, ¶ 2 ("Defendants discriminated against [Plaintiff] by their individual acts and on behalf of [BlackRock]); Second Count, ¶ 2; Third Count, ¶ 2; Fourth Count, ¶ 2; Fifth Count, ¶ 2; Sixth Count, ¶ 2; Seventh Count, ¶ 2.

The only specific allegation regarding Mr. Fink is that in 2018, at an internal meeting, Mr. Fink allegedly said there were too many white males in leadership positions, although Plaintiff does not allege that he was ever in a leadership position, or how this alleged comment related to the termination of his employment four years later for violating the Vaccination Policy.  SAC ¶ 15.  Even taking this allegation at face value, it falls woefully below the requisite standard for individual liability.

As a result, the First, Second, Third, Fourth, Fifth, Sixth, and Seventh Counts of Plaintiff's Second Amended Complaint alleging claims under the LAD should be dismissed as to Mr. Fink.

Plaintiff cannot state an actionable intentional infliction of emotional distress claim against Mr. Fink individually.  There are simply no factual allegations against Mr. Fink that create a plausible claim for "extreme and outrageous conduct."  *See Quarles*, 2006 WL 1098050, at *4 (dismissing IIED claims, holding conduct was not extreme and outrageous where supervisor discussed Plaintiff's "violation of store policy and discharged her because of that violation").  Plaintiff's Eighth Count alleging IIED should be dismissed as to Mr. Fink.

Finally, Plaintiff's Ninth Count asserting a New Jersey Declaratory Judgment Act claim should be dismissed against Mr. Fink for the same reasons as BlackRock – there is no private right of action under the statute or regulation under which Plaintiff seeks to proceed, for the reasons set forth above.

Because none of the counts in the Second Amended Complaint state a viable cause of action for individual liability against Mr. Fink, who was not a decisionmaker with respect to any employment action taken against Plaintiff, he should be dismissed with prejudice from this action.

## V.    <u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that this Court grant its Motion to Dismiss Plaintiff's Second Amended Complaint.

Dated:  May 4, 2023                    Respectfully submitted,

                                  **MORGAN, LEWIS & BOCKIUS LLP**

                                  */s/ Thomas A. Linthorst*
Thomas A. Linthorst
Needhy Shah
502 Carnegie Center
Princeton, New Jersey 08540-7814
Telephone: (609) 919-6600
Facsimile: (609) 919-6701
thomas.linthorst@morganlewis.com
needhy.shah@morganlewis.com

*Attorneys for Defendants BlackRock, Inc. and Laurence Fink*

23