UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KURT DZIBELA,

    Plaintiff,

      v.

BLACKROCK INC., et al

    Defendants.

Civil Action No. 23-02093 (RK) (JBD)

**MEMORANDUM OPINION**

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon Defendant BlackRock Inc. ("BlackRock")

and Defendant Lawrence Fink's ("Fink") (collectively, "Defendants") Motion to Dismiss, (ECF

No. 13), Plaintiff Kurt Dzibela's ("Plaintiff") Third Amended Complaint, (ECF No. 12). Plaintiff

filed a brief in opposition, (ECF No. 24), and Defendants filed a reply brief, (ECF No. 25). The

Court has considered the parties' submissions and resolves the matter without oral argument

pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth

below, Defendants' Motion to Dismiss is **GRANTED**.

## I.    BACKGROUND

    This is an employment discrimination claim arising from a dispute regarding Plaintiff's

compensation, failure to be promoted, and termination from BlackRock. The suit alleges that

Defendants – BlackRock and Fink – discriminated against Plaintiff based on his race, color, sexual

identity, and disability by implementing Environmental, Government, and Social ("ESG")

investment strategies and striving to meet Diversity, Equity, and Inclusion ("DEI") targets.

Further, Plaintiff claims that BlackRock's COVID-19 Policy requiring all employees to be

vaccinated constituted a ploy to terminate individuals like Plaintiff, who refused to get vaccinated, in an effort to replace such individuals with DEI hires.

The facts below are taken from the TAC and assumed to be true solely for the purposes of deciding the pending Motion.

### A. BLACKROCK'S DEI AND ESG POLICIES

Plaintiff is a heterosexual Caucasian male. (Third Amended Complaint ("TAC") ¶ 15.) Plaintiff began working at BlackRock, the world's largest asset manager, in 2015 as an equity finance trader on the International Equity Desk. (*Id.* ¶ 14.) In fact, BlackRock recruited Plaintiff to join the firm. (*Id.*) Plaintiff contends that at all relevant times, he was an "excellent employee with excellent results." (*Id.* ¶ 16.) Plaintiff alleges that in or around 2018, BlackRock shifted its focus "from seeking traditional yields for its clients" to ESG investing strategies. (*Id.* ¶¶ 2, 18.) Further, Plaintiff claims that management compensation became tied, in part, to hitting DEI targets. (*Id.* ¶ 2.) In this way, Plaintiff alleges that these policies "explicitly or implicitly required management to replace[,]" discriminate, and/or terminate "employees who were white, male and heterosexual" and that "promotions and financial compensation" favored individuals who met DEI targets. (*Id.* ¶¶ 21–22.) Plaintiff also claims, "upon information and belief," that race, gender, sexual orientation and sexual identity "became factors in BlackRock's bonus compensation schemes in or about 2018," which detrimentally impacted Plaintiff. (*Id.* ¶ 31.)

Plaintiff claims that these policies were "reflected in annual letters published by Fink . . . ." (*Id.* ¶ 22.) At an internal quarterly earnings meeting in 2018, Fink, a "white male," "announced that there were too many white males in *leadership positions*," and led a campaign whereby employees "would be judged on discrete factors such as race, gender, and sexual orientation" to promote DEI purposes. (*Id.* ¶ 17 (emphasis added).) Plaintiff claims that these ESG and DEI

policies encouraged by Fink "were and remain illegal, and all discrimination against [Plaintiff] . . . was the direct and proximate result of Fink's promotion of illegal DEI and ESG policies . . . ." (*Id.* ¶ 20.) Further, such policies impacted employee compensation and bonuses and, "combined with the outspoken discriminatory intent of Fink and his subordinates who were executing his policies," created a hostile work environment for white, heterosexual males like Plaintiff. (*Id.* ¶ 31.)

Plaintiff states that, on several occasions, he questioned management about the propriety of BlackRock's DEI and ESG policies, and how he was supposed to "sell ESG vehicles to customers when [BlackRock] owed the customers fiduciary duties to generate the highest returns" and not to act "in the parochial political and social interests of the corporate CEO and chairman." (*Id.* ¶ 24.) Specifically, Plaintiff raised these questions at a 2018 corporate strategy meeting in the presence of numerous directors. (*Id.* ¶ 25.) In response to Plaintiff's question, "an awkward 'mic drop' moment of silence occurred." (*Id.* ¶ 27.) Plaintiff interpreted such silence to have occurred because of the "obvious correctness of [his] question which the Directors could not address in light of the policies being implemented because of Fink's open command that such policies be executed by management." (*Id.* ¶ 27.)

## B. COMPENSATION AND PROMOTIONS

Despite BlackRock's ESG and DEI policies, the International Equity Desk at which Plaintiff worked "had a record year in 2019 and was up approximately 500% from 2015" when Plaintiff started his employment. (*Id.* ¶ 28.) Plaintiff noted that during this period, "markets, generally, were generating record-breaking returns." (*Id.*) Plaintiff alleges that because his performance was so successful in 2019, "it was not reasonably feasible" for Defendants to terminate him. (*Id.* ¶ 19.) While Plaintiff's team achieved great success, his compensation remained the same, while "upon information and belief, Fink, and those carrying out his directives

regarding ESG investments and race-based hiring policies" received record high compensation. (*Id.* ¶ 30.)

Further, Plaintiff alleges that he was being passed over for promotions, "often by foreigners from other nations," because such hires helped BlackRock reach its desired DEI profile, "while simultaneously discriminating against white, heterosexual men." (*Id.* ¶ 32.) In response to these hires, Plaintiff "noted to management that he obviously was not fitting the 'criteria' for advancement, implying that he was not of the 'right' race, sex, and sexual orientation." (*Id.* ¶ 33.) Due in part to this sentiment of not fitting the "DEI criteria," as well as because he had twin sons with disabilities, in or around 2019, Plaintiff was given a flexible work schedule where he could work out of BlackRock's Princeton, New Jersey office. (*Id.* ¶ 34.) In 2020, Plaintiff moved to the U.S. Equity Desk "as the U.S. Equity Desk had a lack of experienced traders who could lead and trade the book effectively." (*Id.*)

### C.  COVID-19 AND BLACKROCK'S VACCINE POLICY

When the COVID-19 Pandemic struck in March 2020, Plaintiff was working "exclusively from his personal residence in New Jersey." (*Id.* ¶ 38.) During 2020, the U.S. Equity Desk had record profits, and again, Plaintiff claims that "terminating him" at that time "was not reasonably feasible." (*Id.* ¶ 39.) In October 2021, BlackRock instituted a COVID-19 policy which mandated that all employees receive the COVID-19 vaccine. (*Id.* ¶ 40.) In discussing this new policy, Plaintiff heard that at a meeting with BlackRock's Directors, a participant raised concerns to Human Resources that BlackRock's COVID-19 policy requiring vaccination could alienate employees and cause BlackRock to lose a large portion of their staff. (*Id.* ¶ 41.) BlackRock's response to this question was "brief and direct to the point that they understood the risks they were taking." (*Id.* ¶ 41) Plaintiff alleges, "upon information and belief," that Defendants hoped to use

the vaccine mandate "to lose employees so that they could accelerate the process of engaging in discriminatory hiring practices centered on DEI." (*Id.* ¶ 42.)

Plaintiff had a pre-existing medical condition and sought a medical exemption from BlackRock's vaccine mandate. (*Id.* ¶ 43.) In December 2021, Plaintiff provided BlackRock with a medical exemption letter signed by his doctor, who advised Plaintiff not to get the "so-called" vaccine due to Plaintiff's medical condition. (*Id.* ¶ 44.) After reviewing the letter, BlackRock denied Plaintiff a medical exemption. (*Id.* ¶ 45.) At the direction of BlackRock, Plaintiff resubmitted his medical exemption letter, and BlackRock sent the letter to an outside consultant for review.[1] (*Id.* ¶ 49.) On January 12, 2022, Plaintiff was told that the outside consultants also denied his medical exemption request. (*Id.* ¶ 51.) No reason was given for why his exemption request was denied, "but it was implied that [Plaintiff's] medical condition" was not "'serious enough' to merit [D]efendants' concern," and thus, Defendants' discriminated against Plaintiff for his medical condition because Plaintiff was ultimately terminated "for not receiving a COVID-19 vaccine." (*Id.* ¶ 51.)

Plaintiff claims, "upon information and belief," that BlackRock's denial of his medical exemption was based "on its desire to retaliate against [Plaintiff]" for questioning BlackRock's ESG policies. (*Id.* ¶ 46.) In addition, by refusing the vaccine, Plaintiff "did not meet a new feature of Fink's ESG policies, which was that all employees should be vaccinated in order to meet one of such goals, which goals simultaneously enriched BlackRock due to its investments in Moderna and other vaccine manufacturers." (*Id.*) Because Plaintiff had already been working from home since March 2020, without incident, he claims BlackRock could have continued providing him

---

[1] Plaintiff names ABC Company 1-5 as a Defendant in the instant matter to represent the outside consultant entity that reviewed Plaintiff's medical exemption letter and denied him an exemption from getting the COVID-19 vaccine pursuant to BlackRock's policy. (*Id.* ¶ 49.)

this "reasonable accommodation" in response to his refusal to get vaccinated. (*Id.* ¶¶ 47, 57.) Instead, "upon information and belief," BlackRock refused this accommodation "because of its desire to force its employees to be injected with a so-called COVID-19 vaccine regardless of their medical condition" and "replace [Plaintiff] with a person who was not a white male, and who did not question [BlackRock's] ESG investing." (*Id.* ¶¶ 47–48.)

### D. REDUCED BONUS AND TERMINATION

On January 15, 2022, Plaintiff received a reduced bonus from the prior year. (*Id.* ¶ 52.) Plaintiff claims he actually earned a larger bonus and had an "Outperform" rating for his work in 2020 and 2021. (*Id.*) However, Plaintiff believed that "the reduced bonus was provided" to him "because of his race, color, medical status, perceived disability, gender, sexual orientation, [and/or] actual or perceived disability . . . ." (*Id.* ¶ 53.) Plaintiff alleges that this reduced bonus "furthered the hostile work environment" he faced. (*Id.*)

Plaintiff alleges that on January 13, 2022, the United States Supreme Court "ruled against the continued imposition of certain so-called COVID-19 vaccine mandates." (*Id.* ¶ 54.) Shortly after this decision was published, Defendant advised Plaintiff that he was being terminated effective February 1, 2022 because of "his refusal to become injected with the" COVID-19 vaccine. (*Id.* ¶ 55.) Plaintiff alleges that his termination and reduced compensation were "based, in whole or in part, on his race, color, medical status, perceived disability, gender, sexual orientation, [and/or] familial status." (*Id.* ¶ 59.)

Following his termination, Plaintiff spoke with a former supervisor who told him that BlackRock was now using an outside consulting firm to filter candidates for the express purpose of hiring people based on their race, color, gender, vaccine status, and sexual orientation. (*Id.* ¶ 61.) Further, this former supervisor claimed that these new candidates "were less qualified or

unqualified because they did not have the knowledge and experience of [Plaintiff] yet were hired in some instances only because they fit the DEI profile." (*Id.*) Plaintiff alleges that the individuals hired to replace him lacked his "qualifications or experience" but only "better fit [D]efendants' discriminatory DEI policy preferences." (*Id.* ¶ 62.)

### E. PROCEDURAL HISTORY

In March 2023, Plaintiff initiated this employment discrimination action against Defendants in the Superior Court of New Jersey. (ECF No. 1.)[2] Defendants removed to this Court the following month, invoking this Court's diversity jurisdiction. (*Id.*) Defendants filed a Motion to Dismiss the second Amended Complaint on May 4, 2023. (ECF No. 5.) On June 9, 2023, Plaintiff filed the currently operative third Amended Complaint (the "TAC"). (ECF No. 12.)

The TAC alleges the following claims against Defendants: Count I alleges discrimination based on color in violation of the New Jersey Law of Discrimination ("LAD"); Count II alleges discrimination based on race under the LAD; Count III alleges disability discrimination under the LAD; Count IV alleges discrimination based on a predisposing genetic characteristic under the LAD; Count V alleges discrimination based on gender under the LAD; Count VI alleges discrimination based on sexual orientation under the LAD; Count VII alleges discrimination based on a hostile work environment under the LAD; Count VIII alleges intentional infliction of emotional distress under a common law negligence theory; Count IX alleges retaliation for whistleblower activity in violation of the Conscientious Employee Protection Act, N.J. Stat. Ann. § 34:19-1 *et seq.*; and Count X requests a declaratory judgement that: BlackRock's vaccine policy

---

[2] Plaintiff acknowledges himself that he amended his Complaint twice in State Court, and once in Federal Court. (ECF No. 24 at 1-2 n. 1.) That makes the subject Third Amended Complaint Plaintiff's fourth operative pleading.

is illegal, all "so-called" COVID-19 vaccines are "not safe or effective," all employees terminated due to non-adherence with the COVID-19 policy were wrongfully terminated, and that BlackRock is enjoined from enforcing the COVID-19 policy. (TAC at 29.)

On July 7, 2023, Defendants filed the pending Motion to Dismiss Plaintiff's TAC. (ECF No. 13.) Following three requests for adjournments, Plaintiff filed his opposition brief on September 15, 2023. (ECF Nos. 15–17, 24.) In his opposition, Plaintiff abandons Counts IV, IX, and X of his TAC, but maintains that the facts pled within Count X are relevant to the un-abandoned counts. (ECF No. 24 at 26 n.7.) Defendants filed a reply brief on October 6, 2023. (ECF No. 25.) On March 27, 2024, Plaintiff filed a letter to notify the Court of the Supreme Court's decision in *Muldrow v. City of St. Louis*, which Plaintiff argues is relevant supplemental authority. (ECF No. 27.) Defendants responded to Plaintiff's Notice of Supplemental Authority. (ECF No. 29.) The instant case was transferred to the undersigned on July 10, 2024.

While the TAC included individual claims for violations of the LAD based on Plaintiff's color, race, gender, and sexual orientation (*i.e.* Counts I, II, V, VI), the parties' briefs consider Counts I, II, V, and VI collectively. (*See* ECF Nos. 13, 24–25.) Accordingly, the Court likewise addresses Counts I, II, V, and VI together. Thus, the sections below address: Counts I, II, V, and VI (discrimination based on race, color, gender and sexual orientation under the LAD), collectively referred to in this opinion as the "Protected Characteristics Counts"; Count III (disability discrimination under the LAD); Count VII (hostile work environment claim under the LAD); and Count VIII (intentional infliction of emotional distress). The Court now considers Defendants' Motion, which seeks to dismiss all counts in the TAC. (ECF No. 13.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). When reviewing a motion to dismiss for failure to state a claim, courts first separate the factual and legal elements of the claims and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 210–11 (3d Cir. 2009). While Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010).

## III.    DISCUSSION

Six of the Counts—Counts I, II, III, V, VI, and VII—arise under the LAD. "[T]here is no single prima facie case that applies to all employment discrimination claims. Instead, the elements of the prima facie case vary depending upon the particular cause of action." *Kirschling v. Atl. City*

*Bd. of Educ.*, 10 F. Supp. 3d 587, 594 (D.N.J. 2014), *aff'd*, 604 F. App'x 153 (3d Cir. 2015).

However, the LAD "borrows the federal Title VII standard in analyzing claims of discrimination."

*Bradley v. Just Greens, LLC*, No. 19-7162, 2019 WL 4316773, at *3 (D.N.J. Sept. 12, 2019) (citing

*Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016)).[3]

The Court notes that the following pleading standard applies to Plaintiff's claims for

employment discrimination under the LAD. The Supreme Court has expressly held "that an

employment discrimination plaintiff does not need to plead facts sufficient to establish a prima

facie case of discrimination." *Buckley v. Power Windows & Sidings, Inc.* No. 09-3162, 2010 WL

3981978, at *4 (D.N.J. Oct. 7, 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)

(stating that *prima facie* elements of employment discrimination claim are an evidentiary standard

and not a pleading requirement)). Rather, a plaintiff alleging employment discrimination need only

plead facts sufficient to meet the standard of Federal Rule of Civil Procedure 8(a), "under which a

pleading must give the defendant fair notice of what the plaintiff's claim is and the grounds upon

which it rests." *Id.* at *4 (citing *Swierkiewicz*, 534 U.S. at 512.); *see also DiTommaso v. Medicines

Co.*, 754 F. Supp.2d 702, 705 (D.N.J. Dec. 7, 2010) (in a reverse discrimination context, a plaintiff

must meet *Twombly's* requirement that the facts alleged "raise the right to relief above a

speculative level. The elements of the *prima facie* claim do not have to be proven, but merely must

be plausible.") (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 295 (3d Cir.2006)).

---

[3] "Courts employ the same framework and standard of review when analyzing claims brought under the NJLAD as they do for analyzing claims brought under Title VII." *Worthy v. Unilever United States, Inc.*, No. 23-17570, 2024 WL 3326039, at *5 (D.N.J. July 8, 2024) (citing *Tourtellotte*, 636 F. App'x at 842)); *see also Tourtellotte*, 636 F. App'x at 842 ("This Court's discrimination inquiry is the same for claims filed under Title VII and the NJLAD[.]" (citing *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 249 (3d Cir. 2006))). Accordingly, courts assess claims brought under the LAD in the same way as claims brought under Title VII. Therefore, even though Plaintiff's TAC only alleged claims pursuant to the LAD, the Court cites to cases referencing Title VII claims in its analysis.

A.    Counts I, II, V, VI – Discrimination Based on Color, Race, Gender, and Sexual Orientation

The Court begins with Counts I, II, V, and VI, which allege Defendants discriminated against Plaintiff on the basis of his color, race, gender, and sexual orientation in violation of the LAD. The Court interprets Plaintiff's TAC to allege discrimination on these grounds in the context of Plaintiff's (1) termination from BlackRock, (2) failure to be promoted while working at BlackRock, and (3) his compensation while working at BlackRock. Defendants respond that the TAC fails to allege sufficient facts to show discrimination in Plaintiff's promotions or compensation, and that Plaintiff was terminated for failing to comply with BlackRock's COVID-19 Policy.

1.    Termination

Defendants argue that Plaintiff's TAC does not allege any facts indicating Plaintiff was terminated for a discriminatory reason. Specifically, Defendants contend that Plaintiff's subjective belief that he was terminated because of his race, gender, color, or sexual orientation—as opposed to the non-discriminatory reason of failing to comply with BlackRock's COVID-19 Policy—is precisely the type of conclusory allegation that is insufficient to survive a 12(b)(6) motion to dismiss. (ECF No. 13 at 9.) Further, Defendants claim that Plaintiff alleges no facts tying BlackRock's ESG and DEI policies, which began in 2018, to Plaintiff's termination in February 2022. (*Id.* at 8.) Plaintiff responds that the LAD is to be construed broadly, and Defendants' DEI and ESG policies, which "promoted and expressly or implicitly mandated elimination of employees who were white, male, and heterosexual," resulted in his termination. (ECF No. 24 at 18.) Plaintiff argues that Defendants replaced him with less qualified individuals who better fit Defendants' DEI profile, and that BlackRock's COVID-19 Policy was "an obvious excuse" to fire Plaintiff without admitting to discriminatory motivations. (*Id.* at 19.)

The elements for a claim of discriminatory discharge under the LAD are as follows: the plaintiff "must demonstrate: (1) that plaintiff is in a protected class; (2) that plaintiff was otherwise qualified and performing the essential functions of the job; (3) that plaintiff was terminated; and (4) that the employer thereafter sought similarly qualified individuals for that job." *Bradley*, 2019 WL 4316773 at *5 (quoting *Kirschling*, 10 F. Supp. 3d at 594 (citations omitted)). In the context of a reverse discrimination claim, like the instant case, when a non-minority alleges to be the victim of discrimination, the first element of the analysis is replaced with the requirement that plaintiff put forward "sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected" under the LAD. *Spreter v. AmerisourceBergen Corp.*, No. 12-2187, 2014 WL 5512150, at *8 n.11 (D.N.J. Oct. 30, 2014) (quoting *Thompson v. Bridgeton Bd. of Educ.,* 9 F. Supp. 3d, 446, 455 (D.N.J. 2014)). Plaintiff's TAC "need not establish a prima facie case of employment discrimination to survive a motion to dismiss," although his allegations "must be facially plausible and must give fair notice to the [D]efendants of the basis for the claim." *Huggard v. Crown Bank,* No. 11-6194, 2012 WL 529548, at *4 (D.N.J. Feb. 17, 2012).

Plaintiff alleges in a general and conclusory fashion that Defendants implemented illegal DEI and ESG policies that ultimately led to his termination, "in whole or in part, on account of his race, color, and sexual orientation." (TAC ¶ 59.) Further, upon Plaintiff's "information and belief," Defendants used "the vaccine mandate [as] an [ ] excuse" to replace Plaintiff with individuals who fit the criteria of a DEI employee. (TAC ¶¶ 46, 48.) As such, regarding element one, Plaintiff has failed to allege sufficient facts to raise a plausible inference that Defendant was treated less favorably on account of a protected characteristic in his termination.[4]

---

[4] Plaintiff cites to the Supreme Court's decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, to argue that Defendants' DEI policies are discriminatory. 600 U.S. 181 (2023). Noting

Plaintiff successfully alleges elements two, three, and four. Regarding element two—that Plaintiff was qualified for and performing his job—the TAC alleges that Plaintiff "at all relevant times [ ], was an excellent employee with excellent results" and "was recruited [ ] to join BlackRock as a Senior Trader." (TAC ¶¶ 1, 16.) Regarding the third element, courts have long held that termination qualifies as an adverse employment action. *See McDonnel Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). As to element four, based on "information and belief," Plaintiff alleges that Defendants hired multiple individuals "to replace [Plaintiff], none of whom had [Plaintiff's] qualifications or experience, but which individuals better fit [D]efendants' discriminatory DEI policy preferences." (TAC ¶ 62.) However, Plaintiff fails to allege "sufficient evidence to allow a fact finder to conclude that the [Defendants]" treated Plaintiff differently on account of a protected characteristic when he was terminated for non-compliance with BlackRock's COVID-19 Policy.

Regarding element one of Plaintiff's discriminatory discharge claim, the allegations contained in the TAC that could be construed as establishing discrimination in Defendants' application of their COVID-19 policy when terminating Plaintiff include the following assertions: (1) at a 2018 internal meeting, Fink allegedly said "there were too many white males in leadership positions" (TAC ¶ 17); (2) Plaintiff believed that his questioning of the merit of Defendants' ESG policies in 2018, prompted Defendants to seek retribution "against [Plaintiff] for'" such questions by denying his medical exemption for the vaccine in 2022 (TAC ¶¶ 25-27, 46); (3) Plaintiff believes that "[D]efendants were hoping to lose employees [through the implementation of its

---

that *Students for Fair Admissions* found two schools had violated the Constitution by considering race in admission decisions, Plaintiff argues such a holding is a "precursor to much more sweeping elimination of all racial discrimination…, including DEI hiring practices by private employers under Title VII." (ECF No. 24 at 17.) However, *Students for Fair Admissions* did not consider DEI policies of private employers, much less rule that such efforts were unlawful. For this reason, the Court does not find Plaintiff's reliance on *Students for Fair Admissions* persuasive as applied to the instant case.

COVID-19 policy] so that they could accelerate the process of engaging in discriminatory hiring practices," as evidenced by Plaintiff's reference to a conference call, which Plaintiff was not a participant on, where a human resources representative discussed the COVID-19 vaccine mandate, and when an unknown, unidentified participant expressed concern that the Policy would "alienat[e], segregate[e]" and cause BlackRock to lose large portions "of their staff," the representative's response was "that they understood the risks they were taking;" (TAC ¶¶ 41-42) and (4) Plaintiff was told by a former supervisor that BlackRock "was now using outside consulting firms to filter candidates and wanted to hire people based on" protected characteristics, that Plaintiff "belie[ved] multiple individuals ultimately were hired to replace [him], none of whom had [his] qualifications or experience, but which individuals better fit defendants' discriminatory DEI policy preferences." (TAC ¶¶ 61, 62.)

The court examines each of these allegations in turn and determines that all such claims constitute "naked assertion[s]" devoid of "further factual enhancement" and legal conclusions that are insufficient to state a claim. *Iqbal*, 556 U.S. at 677 (quoting *Twombly*, 550 U.S. at 557). Statement (1) references statements Fink made in 2018 and Plaintiff cannot plausibly connect this general claim – which was not directed at Plaintiff or applicable to him as he did not occupy a leadership position at BlackRock – to Defendants' decision to terminate Plaintiff in February 2022 following Plaintiff's non-compliance with the company's COVID-19 Policy. (TAC ¶¶ 14, 17, 55.); *but see Johnston v. Sch. Dist. of Phila.,* No. 04-4948, 2006 WL 999966, at *1-*2 (E.D. Pa. Apr. 12, 2006) (where defendant's three discriminatory comments made directly to plaintiff in the two months leading up to his termination sufficiently alleged discrimination.) As to Statement (2), regarding Plaintiff's belief that his questioning of BlackRock's ESG and DEI policies prompted Defendants to retaliate against him many years later by denying his medical exemption letter,

forwarding same to a private consultant for its review, which resulted in Plaintiff being in violation of the COVID-19 Policy when he refused to get vaccinated, is an attenuated theory.[5] The TAC includes no factual allegations that anyone at BlackRock voiced any issues with Plaintiff's opinion, then or ever, including when he expressed them publicly. (TAC ¶ 27 (noting that when Plaintiff questioned the ESG policies at a directors meeting in 2018, his question was met with an "awkward 'mic drop' moment of silence").)

As to Statement (3), Plaintiff's interpretation of the company representative's comment regarding the COVID-19 Policy's implementation as evidence of BlackRock's desire to eliminate certain employees is simply not supported by the actual factual assertions in the TAC. The representative indicated that BlackRock understood the possible consequences of implementing the policy, not that the consequence was the company's intended purpose. (TAC ¶ 41.) Even in the light most favorable to Plaintiff, the factual assertions set forth in the TAC simply do not support such an inference that BlackRock's understanding of the possible impact of a vaccine mandate in any way equates to a desire to lose employees for the purpose of hiring diverse candidates. *See Buckley v. Power Windows & Siding, Inc.,* No. 09-3162, 2010 WL 3981978, at *4 (D.N.J. Oct. 7, 2010) (where the court dismissed a claim that the defendants "engaged in behavior which was harassing and discriminatory towards Plaintiff on the basis of her age," that she "suffered intentional harassment because of her age," and that the alleged "discriminatory conduct was based upon" her age because such allegations constituted "naked assertion devoid of 'further factual enhancement' and legal conclusions are insufficient to state a claim" (citations omitted)). The simple appreciation by BlackRock personnel that implementing its neutral COVID-19 Policy

---

[5] The court notes that Plaintiff's TAC, which consists of 30 pages and over 60 numbered paragraphs, includes a single specific reference to Plaintiff expressing his displeasure with BlackRock's DEI and ESG policies in 2018. (TAC ¶¶ 25-27.)

may result in resignations or terminations is not evidence, without more, of discrimination based on race, gender, color, or sexual orientation.

Lastly, Statement (4) is based on Plaintiff's subjective belief that he was replaced by multiple unqualified individuals who better fit Defendants' DEI policy preferences. (TAC ¶ 62.) This singular allegation of discrimination, based on Plaintiff's subjective belief that he was replaced by individuals with lesser qualifications but were diverse, without more, is insufficient to show discrimination in Plaintiff's termination. *See Groeber v. Friedman & Schuman, P.C.,* 555 F. Appx. 133 (3d Cir. 2014) (a plaintiff's "subjective belief that [a protected category] played a role in these employment decisions…is not sufficient to establish an inference of discrimination."); *see also Sangi v. Warren Hosp.,* No. 10-4571, 2011 WL 4857933, at *2 (D.N.J. Oct. 11, 2011) ("Plaintiff appears to believe that pleading [that he received reduced compensation and was terminated] along with an allegation that Plaintiff is in a protected class is sufficient to state [his] claim. It is not."). *Worthy v. Unilever United States, Inc.,* No. 23-17570, 2024 WL 3326039, at *9 (D.N.J. July 8, 2024) (dismissing plaintiff's discrimination claims under the NJLAD on a motion to dismiss because "sparse allegations alone are not sufficient to show [d]efendant discriminated against him on the basis of race" (citing *Foy v. Wakefern Food Corp.,* No. 09-1683, 2010 WL 147925, at *4 (D.N.J. Jan. 7, 2010))).

Applying the plausibility standard, the evidence Plaintiff offers to link Defendants' COVID-19 Policy to Defendants discriminating based on protected characteristics is still insufficient. As stated in the TAC, the COVID-19 Policy applied to "all employees." (TAC ¶ 46.) Plaintiff does not allege that BlackRock failed to implement its COVID-19 Policy across the board or was otherwise selective in its implementation. Moreover, Plaintiff fails to allege that in refusing to accommodate his medical exemption, Defendants accommodated similar medical exemptions

for individuals who fit Defendants' DEI profile. Plaintiff must "provide sufficient non-speculative and conclusory allegations that, accepted as true, state a claim" for discrimination under the LAD. *Iqbal*, 556 U.S. at 678; *see also Nguyen v. Quick Check, Store No. 129,* No. 12-3300, 2013 WL 6623923, at *2 (D.N.J. Dec. 16, 2013) (court granted motion to dismiss plaintiff's NJLAD claims, noting the complaint "lacks factual specificity and fails to identify [d]efendant's particular conduct that is alleged to have harmed [p]laintiff," noting that the "court is free to ignore…factually unsupported accusations.")[6] Accordingly, Plaintiff fails to allege sufficient facts to claim discriminatory discharge.

### 2. Promotion

The court next considers the argument that his non-promotion is actionable under Counts I, II, V, and VI. To state a *prima facie* case of discriminatory failure-to-promote under the LAD, a plaintiff must allege: "(1) that [ ]he is a member of a class protected by the anti-discrimination law; (2) that [ ]he was qualified for the position or rank sought; (3) that [ ]he was denied promotion, reappointment, or tenure; and (4) that others . . . with similar or lesser qualifications achieved the rank or position." *Dixon v. Rutgers, The State Univ. of N.J.*, 541 A.2d 1046, 1051 (N.J. 1988).

Plaintiff fails to state a claim for discriminatory failure to promote. While Plaintiff sufficiently alleges element three, that he was denied a promotion, the TAC lacks any facts regarding Plaintiff's specific qualifications in relation to the promoted position he was seeking. (TAC ¶¶ 16, 32.) Accordingly, Plaintiff insufficiently alleges element two. *See Khalifeh v. Duff & Phelps Corp.* No. 16-4572, 2017 WL 1003220, at *6 (D.N.J. Mar. 15, 2017) (finding plaintiff

---

[6] *But see DiTomasso v. Medicines Co.,* 754 F. Supp.2d 702, 703 (where court denied a motion to dismiss Caucasian plaintiff's LAD discrimination claims where complaint alleged that defendant supervisor provided work opportunities, salary increases, better work assignments, more lenient schedules, and special treatment to similarly situated African American employees).

failed to allege element two of discriminatory failure to promote claim when complaint did not identify "Plaintiff's own qualifications in relation to any such position"); *Ayala v. New Jersey Dep't of Law & Pub. Safety, Div. of State Police,* No. A-6125, 09T1, 2011 WL 5041395, at *4 (N.J. Super. App. Div. Oct. 25, 2011) (same).

Plaintiff insufficiently alleges elements one, as the TAC does not plausibly claim that Defendants discriminated against Plaintiff by not promoting him, and four, as the TAC fails to allege that similar or lesser qualified individuals received promotions over Plaintiff. (*Id.* ¶¶ 21, 32.) The only factual allegation in Plaintiff's TAC regarding promotions claimed that he was passed over for promotions, "often by foreigners from other nations," because such hires helped BlackRock reach its desired DEI profile, "while simultaneously discriminating against, white, heterosexual men." (*Id.* ¶ 32.) The TAC makes no mention of what specific promotions Plaintiff was up for that went to these unnamed, unidentified "foreigners," the requirements for these promotional positions and Plaintiff's qualifications, the qualifications of these "foreigners" as compared to Plaintiff, or whether these "foreigners" were of a different color, race, gender, or sexual orientation than Plaintiff. *See Khalifeh.,* 2017 WL 1003220, at *6 (finding plaintiff failed to sufficiently allege a discriminatory failure-to-promote claim on a motion to dismiss when the complaint did not identify "any specific promotion or position that [p]laintiff sought but was denied based on his membership in protected class, the requirements of any such position, the qualifications of any other employee that received a promotion instead of [p]laintiff, or any other facts describing the circumstances of such discrimination."); *Ayala*, 2011 WL 5041395, at *4 (affirming trial judge's grant of a motion to dismiss when trial judge found the complaint was "bereft of any specifics with regard to each plaintiff's application for promotion; his qualifications; the dates of the rejection and whether the sought after position was filled and, if so, by whom; and,

if there was a successful candidate, the successful candidate's qualifications."). Here, too, Plaintiff fails to identify any specific promotion he sought; when he applied for that promotion and when he was rejected for that position; whether the sought after position was filled; and if so, by whom and what that person's qualifications were. As such, Plaintiff fails to allege sufficient facts to establish element one, two, and four of his discriminatory failure-to-promote claim.

While at the motion to dismiss stage, "a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element,'" *Fowler v. UPMC Shadyside,* 578 F.3d 203, 213 (3d Cir. 2009) (citation omitted), the Court must still "discard bare legal conclusions or factually unsupported accusations." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555). Plaintiff's claim that he was "passed over for promotion despite his success," because "he obviously was not fitting the 'criteria' for advancement, being the 'right' race, sex, and sexual orientation," (TAC ¶ 33), is precisely the type of "factually unsupported" recitation of the elements of a discrimination claim that the Court discards on a motion to dismiss. *Id.*; *see also Santiago v. Warminster Twp.,* 629 F.3d 121, 131 (3d Cir. 2010) (affirming that motion to dismiss was proper where the complaint contained only "naked assertion[s]" that defendants directed others to use excessive force because "mere restatements of the elements of [plaintiff's] supervisory liability claims [] are not entitled to the assumption of truth").

Plaintiff's failure to plead any specific facts regarding why he was not promoted is fatal to his claim, even at this preliminary posture. *See Khalifeh,* 2017 WL 1003220, at *6; *see also Dickerson v. New Jersey Inst. of Tech.,* No. 19-8344, 2019 WL 6032378, at *6 (D.N.J. Nov. 14, 2019) (dismissing failure to promote claim on a motion to dismiss because complaint lacked any well-pleaded "facts establishing that 'despite [her] qualifications, [s]he was rejected' for a

promotion" or that defendant "sought and hired individuals in the employment group that matched [plaintiff's] qualifications"). For these reasons, Plaintiff's claim that Defendants discriminated against him in the context of his non-promotion is dismissed.

### 3. Compensation

Defendants seek dismissal of the discriminatory compensation claim under the LAD, arguing that Plaintiff's TAC fails to (1) plead sufficient facts to show that Plaintiff received less compensation compared to similarly situated individuals and (2) the majority of Plaintiff's compensation claims, other than those regarding his January 2022 bonus, are barred by the statute-of-limitations ("SOL"). (ECF No. 13 at 10-12.) Plaintiff argues that despite improved performance, his compensation remained flat because of Defendants' reliance on "discreet factors such as race, gender, and sexual orientation." (ECF No. 24 at 18 (citing TAC ¶¶ 28–31).) Plaintiff alleges that he was discriminated against, evidenced by his "flat or reduced compensation," as a result of Defendants' DEI and ESG strategies. (*Id.* at 18–19.)

Similar to the discriminatory discharge or failure-to-promote claim, a plaintiff alleging disparate treatment based on reduced or stagnant compensation because of his gender or race under the LAD must show that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) "the adverse employment action occurred under circumstances that gave rise to an inference of unlawful discrimination." *Bradley*, 2019 WL 4316773, at *3 (citing *Tourellotte*, 636 F. App'x at 842).

Plaintiff successfully alleges element two, as the TAC states Plaintiff "was an excellent employee" during the relevant time. (TAC ¶ 16.) As to element three, Plaintiff sufficiently pleads that his reduced or stagnant compensation is an adverse employment action. *See Storey v. Burns Int'l. Sec. Servs.,* 390 F.3d 760, 764 (3d Cir. 2004) (holding that an "adverse employment action[]"

alters an "employee's compensation…"). The Court now considers elements one and four, whether Plaintiff's allegations regarding his "flat or reduced compensation" sufficiently show that Defendants compensated Plaintiff in such a way that gives "rise to an inference of unlawful discrimination." *Bradley*, 2019 WL 4316773 at *3. As stated previously, Plaintiff's TAC "need not establish a prima facie case of employment discrimination to survive a motion to dismiss," but the allegations "must be facially plausible and must give fair notice to the [D]efendants of the basis for the claim." *Huggard*, 2012 WL 529548, at *4.

Plaintiff states that "[u]pon information and belief, race, gender, sexual orientation and sexual [identity] became factors in BlackRock's bonus compensation schemes in or about 2018." (TAC ¶ 31.) Further, despite his success at the International Equity Desk in 2019, Plaintiff's compensation was "flat, while, upon information and belief, Fink and those carrying out his directives regarding ESG investments and race-based hiring policies had record personal compensation." (*Id.* ¶ 30.) Further, in January 2022, Plaintiff claims he received "a reduced bonus from the prior year," despite his belief that he "actually earned a larger bonus, and had an 'Outperform' rating for his work in 2020 and 2021." (*Id.* ¶ 52.) Plaintiff believes he received this reduced bonus "because of his race, color, medical status, perceived disability, gender, sexual orientation, [and/or] actual or perceived disability . . . ." (*Id.* ¶ 53.)

Plaintiff commenced this action in March 2023. (ECF No. 1.) The statute of limitations for LAD claims is two years from the date of accrual. *See Thomas v. Care Plus of New Jersey, Inc.*, 484 . App'x 692, 693 (3d Cir. 2012). Thus, all of Plaintiff's allegations regarding compensation, other than his claim about his January 2022 bonus, are untimely under the LAD's SOL. *See Taylor v. Lincare*, No. 15-6284, 2016 WL 3849852, at *5 (D.N.J. July 15, 2016) (recognizing that LAD

claims arising two years prior to the filing of the action are time barred).[7] Plaintiff contends that Defendants' "severe and pervasive discriminatory DEI policy" was the "common thread running through all the employment problems . . . , which culminated in [Plaintiff's] termination," and thus, the termination date in 2022 marked the start of the SOL. (ECF No. 24 at 21–22.) Plaintiff contends that Defendants actions regarding his compensation constituted "a classic continuing violation," as each of Defendants discriminatory acts was a reflection of the "pervasive discriminatory DEI policy." (*Id.* at 21 (citing *Alexander v. Seton Hall University*, 8 A.3d 198, 203 (N.J. 2012)).)[8] However, Plaintiff's claim of reduced or stagnant compensation is precisely the type of "discrete act" subject to the LAD's two-year statute of limitations. *Griffin v. Dept. of Human Services,* No. 19-2751, 2019 WL 3369783, at *3 (D.N.J. Jul. 26, 2019) ("demotions, reductions in pay, failures to promote . . . , and compensation decisions are all discrete acts, and are not subject to the continuing violation doctrine (citing *AMTRAK v. Morgan,* 536 U.S. 101, 114(2002)); *Sgro. v. Bloomberg L.P.,* 331 F. App'x 932, 938 (3d Cir. 2009) (Discrete acts include "failures to promote, and other adverse employment actions" which "do not fall under the continuing violation doctrine and are subject to the NJLAD's two-year statute of limitations.").

Regarding Plaintiff's allegation that he received a reduced bonus in January 2022, he claims that Defendants reduced his bonus, "despite his having an 'Outperform' rating given to him

---

[7] The Court notes that the SOL is an affirmative defense, and not generally decided at a motion to dismiss posture. *See Crump v. Passaic County*, 147 F. Supp. 3d 249, 259 (D.N.J. 2015). However, "where the complaint facially shows noncompliance with the limitations period," dismissal on statute of limitations grounds may be appropriate. *Id.*

[8] The decision in *Alexander v. Seton Hall University* does not save Plaintiff's untimely compensation claims. In that case, the New Jersey Supreme Court held that where an employer made a discriminatory pay decision after the SOL elapsed but there was evidence of such discriminatory pay decisions during the SOL, the plaintiff could still recover for the discriminatory payments during the SOL but the SOL still "cut[s] off the untimely portion of the claim." 8 A.3d 198, 235 (N.J. 2012). As applied to the instant case, *Alexander v. Seton Hall University* dictates that Plaintiff's compensation claims that occurred in the prior two years to the filing of the Complaint are timely (i.e. March 2021 – March 2023.)

for his work for both 2020 and 2021" because of BlackRock's ESG and DEI Policies which consider "race, gender, sexual orientation and sexual [identity]" as factors in its "bonus compensation schemes." (TAC ¶ 31.) This allegation is supported only by Plaintiff's apparent belief that he should have received a higher bonus. Without alleging any facts to plausibly claim that Defendants did not give Plaintiff a higher bonus on account of a protected characteristic, such a claim is insufficient to plead compensation discrimination. *See Foy v. Wakefern Food Corp.*, No. 09-1683, 2010 WL 147925, at *4 (D.N.J. Jan. 7, 2010) ("[M]ere allegation that an adverse employment action was motivated by age, without more, is exactly the type of broad conclusory allegation which the Supreme Court has found insufficient.").

While Plaintiff is not required to plead detailed factual allegations, he must allege some facts that plausibly allege "an inference of discrimination" and can do so "with any kind of relevant evidence, including comparator evidence, evidence of similar racial discrimination against other employees, or direct evidence of discrimination from statements or actions by [the plaintiff's] supervisors suggesting racial animus." *Phillips v. Starbucks Corp.*, 624 F. Supp. 3d 530, 540 (D.N.J. 2022) (quoting *McFadden v. Whole Foods Mkt. Grp., Inc.*, No. 19-01103, 2021 WL 736899, at *7 (E.D. Pa. Feb. 25, 2021)).

The only comparator Plaintiff suggests is to compare his compensation to those of BlackRock's CEO, Fink, "and those carrying out his [policy] directives." (TAC ¶¶ 28–30.) Fink, like Plaintiff, is a Caucasian male, so such a comparison gives no inference of any discrimination based on race, gender, or color. (*Id.* at ¶ 17.) Further, Plaintiff does not identify the other individuals "carrying out [Fink's policy] directives." Most problematically, the TAC attempts to liken Plaintiff's compensation to that of his superiors—including the CEO of a Fortune 500, multi-trillion dollar company, which is the world's largest asset-manager—do not give rise to any

inference of discrimination either. *See Susko v. Weidenhammer Sys. Corp.*, No. 20-6543, 2021 WL 2451614, at *7 (E.D. Pa. June 16, 2021) (granting motion to dismiss Title VII claims where complaint alleged sex discrimination based on comparator that recently hired male account executive received higher pay but did not mention male account executive's "education, prior work experience, specialized training, or any other factors as compared to [plaintiff]"); *see also Fisher v. Catholic Soc. Servs.*, No. 18-04653, 2019 WL 3731688, at *5, (E.D. Pa. Aug. 7, 2019) (dismissing plaintiff's discrimination claim because "bald statements" that similarly situated coworkers were treated differently "without identifying any comparators or how they were similarly situated is exactly a 'threadbare recital of the elements of a cause of action' that *Iqbal* repudiates" (cleaned up)); *Barber v. Univ. of Med. & Dentistry of New Jersey,* 118 F. App'x 588, 592 (3d Cir. 2004) (affirming dismissal of discrimination claim for African American plaintiff who "failed to produce any evidence that he received less compensation than his white counterparts").

The TAC is devoid of any facts pertaining to Plaintiff's 2022 bonus that show someone of a different race in Plaintiff's position received a higher bonus, someone with Plaintiff's characteristics also received a reduced bonus, or that Plaintiff's supervisor espoused any racial animus.[9] Accordingly, Counts I, II, V, and VI are dismissed.[10]

---

[9] Plaintiff claims the Supreme Court in *Muldrow v. City of St. Louis, Missouri* lowered the standard required when alleging a defendant's discriminatory animus in a Title VII claim, and that Plaintiff's allegations of Defendants' discrimination regarding his not being promoted, receiving reduced bonuses, and ultimately being terminated certainly pass *Muldrow*'s low bar. (ECF No. 26. at 1.) However, *Muldrow* lowered the bar for what constituted an adverse employment action, not the requisite level of discriminatory animus. *Muldrow*, 601 U.S. 346, 358 (2024). Accordingly, because Plaintiff's allegations of non-promotion, reduced compensation, and termination clearly meet the requirement for alleging an adverse employment action, Plaintiff's citation to *Muldrow* does not change the Court's analysis.

[10] Similar to Plaintiff's other allegations that Defendants' DEI and ESG policies "required management to replace and/or discriminate against protected classes of white male, heterosexual workers based on their race, color, gender, and gender identity such that promotions and financial compensation within BlackRock became widely tied to criteria related to inclusion in 'groups' which were not among such protected

### B.    COUNT III – DISABILITY DISCRIMINATION

"The threshold inquiry in a disability-discrimination case is whether the plaintiff is a member of a protected class." *Guzman v. M. Teixeria Int. Inc.,* 296 A.3d 1064, 1068 (N.J. Super. Ct. App. Div. 2023) (citing *Victor v. State*, 4 A.3d 126 (N.J. 2010)). To establish membership in a protected class in a case of perceived disability discrimination under the LAD, a plaintiff must show he "qualifies as an individual . . . who is perceived as having a disability, as that has been defined by statute." *Id.* at 126; *see also Wild v. Carriage Funeral Holdings, Inc.*, 205 A.3d 1144 (N.J. Super. Ct. App. Div. 2019), *aff'd*, 227 A.3d 1206 (2020).

Plaintiff alleges a disability based on two grounds: (1) that his pre-existing medical condition makes him disabled or (2) that his unvaccinated status makes him disabled. In both cases, Plaintiff fails to allege a disability recognized under the LAD. First, Plaintiff fails to allege any facts showing that his pre-existing medical condition, which Defendants deemed not "serious enough to merit" an exemption from the vaccine, was a qualifying disability under the LAD.[11] *See Guzman,* 296 A.3d at 1068 (affirming dismissal of disability claim, noting plaintiff must adequately plead a qualifying disability as defined under the LAD to survive a motion to dismiss.) The Court notes the TAC is devoid of any allegations that Plaintiff's pre-existing medical condition impacted his ability to work, or that Defendants perceived it as a disability. (*See generally* TAC.) Further, perceived disability claims in this context fail "because the employer

---

classes," represent Plaintiff's conclusory allegations and beliefs, that constitute "[t]hreadbare recitals of the elements of a cause of action[,]" and are thus not given the presumption of truth. (TAC ¶ 21; *see also Iqbal*, 556 U.S. at 678.

[11] The LAD defines "disability" as "suffering from physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness ... or from any mental, psychological, or neurological condition which prevents the normal exercise of any bodily or mental function or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques." N.J. Stat.Ann. § 10:5–5(q).

could not be considered to have perceived anything about the individual plaintiff merely by its application of a policy applicable to employees generally," as is the case here. (ECF No. 13 at 16).

Second, the Court's research did not turn up any cases that held a person is perceived as disabled on account of their unvaccinated status. *See Johnson v. Mount Sinai Hosp. Grp., Inc.,* No. 22-2936, 2023 WL 2163774, at *6 (E.D.N.Y. Feb. 22, 2023) ("The decision to vaccinate or not to vaccinate is a personal choice, while a disability under the ADA is not something a person chooses.").[12] Plaintiff cites to no caselaw in support of his claim that either his undisclosed pre-existing medical condition or his unvaccinated status qualifies as disabled under the LAD.[13] Plaintiff's assertion that his termination in 2022 in someway relates back to his articulated personal views about BlackRock's DEI and ESG policies in prior years is without evidence in the TAC. Notwithstanding this attempt to somehow claim his termination for non-compliance with BlackRock's COVID-19 Policy was pretext for Defendants long-harbored animus against Plaintiff for his articulation of anti-DEI and ESG policies, it appears to the Court that Plaintiff's *de facto* argument is really to challenge the efficacy of the COVID-19 Vaccine and the legality of BlackRock's COVID-19 Policy. (TAC at 21-31 (includes over ten pages of Plaintiff's TAC

---

[12] *See e.g., Leggo v. M.C. Dean, Inc.,* No. 22-374, 2023 WL 1822383, at *4–7 (E.D. Va. Feb. 7, 2023) ("[T]he allegation that [defendant] regarded [plaintiff] as having a disability of being perpetually infected with or susceptible to COVID-19 is implausible."); *Jorgenson v. Conduent Transp. Sols., Inc.,* No. 22-1648, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023) ("[V]accination status is likewise not an impairment or an impediment to work-related tasks."); *Speaks v. Health Sys. Mgmt., Inc.,* No. 22-1648, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) ("Refusing to get a vaccine required by an employer is not itself an 'impairment' of any sort" but rather "reflects a personal choice."); *Shklyar v. Carboline Co.,* 616 F. Supp. 3d 920, 926 (E.D. Mo. 2022), *aff'd,* 2023 WL 1487782 (8th Cir. Feb. 3, 2023). While the cases cited interpret the application of federal law under the Americans with Disability Act ("ADA"), "disability discrimination claims under the ADA and the NJLAD are analyzed under the same framework." *Stewart v. Cty. of Salem,* 274 F. Supp. 3d 254, 259 (D.N.J. 2017) (citation omitted).

[13] While the TAC does not contain a claim for actual disability discrimination, the Court notes that such a claim would be dismissed on the same grounds as Plaintiff's perceived disability discrimination claim. *See Guzman,* 476 N.J. Super. at 72. Further, even under seal, Plaintiff did not provide any information to the Court as to his pre-existing medical condition, including but not limited to any medical diagnosis or prognosis, through medical records or otherwise.

contesting the efficacy of the COVID-19 vaccine and questions the safety, efficacy, and legality of the vaccine itself).) However, the Court notes, that "every court that has considered the constitutionality of a COVID-19 vaccine mandate by an employer or university has deemed" such mandate constitutional so long as the mandate survives rational basis review, is in furtherance of public health, applied to all employees, and permits exemptions for legitimate health or religious reasons. *See Sharikov v. Philips Med. Sys. MR, Inc.* 103 F.4th 159, 167 (2d Cir. 2024) (plaintiff's complaint was dismissed when he alleged his former employer violated the ADA when it terminated him for his refusal to comply with the employer's COVID-19 vaccine mandate because "discharging an employee for failing to comply with generally applicable safety policies does not, without more, equate to impermissible discrimination under the ADA.")[14]

Many of Plaintiff's disability arguments center on BlackRock's failure to accommodate Plaintiff by not allowing him to continue working from home. (ECF No. 24 at 23-24; TAC ¶¶ 47-49, 57 (alleging that BlackRock refused to accommodate Plaintiff "because of [Defendants'] desire to force its employees to be injected with a so-called COVID-19 vaccine regardless of their medical condition" and "replace [Plaintiff] with a person who was not a white male, and who did not question [D]efendant's ESG investing").) However, the failure-to-accommodate discussion

---

[14] See e.g. *Smith v. Biden*, No. 21-19457, 2021 WL 5195688, *6 (D.N.J. Nov. 8, 2021.) denying temporary restraining order and/or preliminary injunction to enjoin defendants from mandating COVID-19 vaccine and noting that based on *Jacobson*, "courts across the country have held that there is no fundamental right to refuse a COVID-19 vaccination.") (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 39 (1905) (holding state had the right to impose a smallpox vaccine mandate, noting that such a regulation was aimed to "protect the public health, public morals, or public safety" of people during the smallpox epidemic, and such a regulation would only be struck down if it had "no real or substantial relation to those objects" or if it amounted to "a plain, palpable invasion of rights secured by fundamental law").); see also *Children's Health Defense, Inc. v. Rutgers, State Univ. of N.J.*, 2022 WL 4377515 at *7 (D.N.J. Sept. 22, 2022) (holding that giving students a choice between getting vaccinated and pursuing an education elsewhere is not the same as forcing vaccination); *Messina v. Coll. of New Jersey*, 566 F. Supp.3d 236, 249 (D.N.J. 2021) (upholding vaccine mandate for university attendance in interest of protecting its students).

goes to Defendants' defense of undue hardship, which is triggered only after Plaintiff meets his burden of plausibly alleging a qualifying disability. *See Guzman,* 296 A.3d at 1068 ("[T]he threshold inquiry in a disability-discrimination case is whether the plaintiff" can show he "qualifies as an individual. . . who is perceived as having a disability, as that has been defined by statute."); *see also Hohider v. United Parcel,* 574 F.3d 169, 194 (3d Cir. 2009) (noting that the ADA "only characterizes as unlawful discrimination an employer's failure to reasonably accommodate an 'otherwise qualified individual' when that accommodation does not impose an undue hardship.") Because Plaintiff has failed to meet this threshold requirement, his failure-to-accommodate arguments are irrelevant at this juncture.[15]

Plaintiff's arguments challenging the efficacy of the COVID-19 vaccine, (TAC at 21–30), and claiming the legality of BlackRock's COVID-19 Policy was "certainly in question at" the time of Plaintiff's termination, are irrelevant to the disability analysis. However, BlackRock's COVID-19 Policy was not undermined by the Supreme Court's decision in *Nat'l Fed'n of Indep. Bus. v.*

---

[15] Plaintiff's conclusory allegations based on his "belief" that Defendants hoped to use the vaccine mandate "to lose employees so that they could accelerate the process of engaging in discriminatory hiring practices centered on DEI" are not supported by the pleaded facts in the TAC or relevant to the disability discrimination analysis. (TAC ¶ 42.)

Further, Plaintiff claims that Defendants denied his medical exemption in retaliation for Plaintiff not getting the COVID-19 vaccine. (*Id.* ¶ 46.) By refusing the vaccine, Plaintiff asserts that he "did not meet a new feature of Fink's ESG policies, which was that all employees should be vaccinated" which "simultaneously enriched BlackRock due to its investments in Moderna." (*Id.*) Again, these claims do not remedy Plaintiff's failure to allege a qualifying disability. Further, BlackRock did not require its employees to receive the Moderna vaccine, and Plaintiff's "beliefs" of a conflict of interest lack factual support. (*Id.*) In addition, Plaintiff's central argument against BlackRock's ESG policies was that they compromised the fiduciary duty to customers "to generate the highest returns" in pursuit of "the parochial political and social interests of the corporate CEO and chairman." (*Id.* ¶ 24.) This assertion is belied by Plaintiff's own TAC, wherein he claims that BlackRock's returns since 2018, when Defendants allegedly implemented these DEI and ESG policies, were at record highs. (*Id.* ¶¶ 28, 38–39.)

*DOL*, 595 U.S. 109, 119 (2022), which Plaintiff cites. That holding had no bearing on a private employer's decision to implement a vaccine mandate, as is the case in the instant matter.

### C.    COUNT VII – HOSTILE WORK ENVIRONMENT

Defendants seek dismissal of the hostile work environment claim under the LAD, arguing that Plaintiff's TAC claims only discrete acts of alleged discrimination, and even so, such allegations do not rise to the level of "severe and pervasive" as required by the LAD. (ECF No. 25 at 9.) Plaintiff counters that BlackRock's DEI policies were not discrete acts but created a corporate culture "infused with discrimination" against "employees who were white, male and heterosexual. . . ." (ECF No. 24 at 25.) Further, Plaintiff contends that this corporate culture of discrimination was "systemic, continuous, severe, and pervasive." (*Id.*)

"To state a claim for hostile work environment, a plaintiff must show that the complained of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." *Khalifeh,* 2017 WL 1003220, at *6 (citing *Lehmann v. Toys R Us, Inc.*, 626 A.2d 445, 453 (N.J. 1993)). "A hostile work environment exists when a workplace is permeated with discriminatory intimidation, ridicule and insult so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Cortes v. Univ. of Med. & Dentistry of New Jersey*, 391 F. Supp. 2d 298, 308 (D.N.J. 2005). To assess a hostile work environment claim, the Court looks at "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Green v. Jersey City Bd. of Educ.*, 828 A.2d 883, 890 (N.J. 2003).

First, Plaintiff's hostile work environment claim derives from the claims discussed above. Plaintiff admittedly states in the TAC that "upon information and belief, race, gender, sexual orientation and sexual identity became factors in BlackRock's bonus compensation schemes . . . , [c]ombined with the outspoken discriminatory intent of Fink and his subordinates who were executing his policies, a hostile work environment was created for white, heterosexual males who did not fit defendants' desired DEI profile." (TAC ¶¶ 31, 52.) Essentially, Plaintiff's hostile work environment claim rests on the same flawed argument Plaintiff raised when claiming his compensation issues fell under the continuing violation doctrine. *See* Section III.c; *see also Harel v. Rutgers*, 5 F. Supp. 2d 246, 262 (D.N.J. 1998) (holding that "distinct decisions against promotion" are "discrete acts instead of an ongoing practice or policy of discrimination"). Plaintiff's hostile work environment claim cannot be premised exclusively on the accumulated impact of discrete job actions. *See Roa v. Roa,* 985 A.2d 1225, 1232 (N.J. 2010) (noting that *AMTRAK v. Morgan,* 536 U.S. 101 (2002) "established a 'bright-line' rule that 'individually actionable allegations cannot be aggregated,'' and "we adopted *Morgan*'s analytical framework in a LAD case").

Further, the Court finds that none of the misconduct complained of in the TAC rises to the level of severe or pervasive as to enable a reasonable person to believe the environment was hostile or abusive. The TAC references one statement made by Fink at an internal quarterly earnings meeting in 2018, which was not directed to Plaintiff, stating "there were too many white males in leadership positions." (TAC ¶ 17.) This statement alone does not meet the level of "severe or pervasive" that characterizes hostile work claims that survive a motion-to-dismiss. See *Taylor v. Metzger,* 706 A.2d 685 (N.J. 1998) (finding that patently racist slur spoken publicly by supervisor to employee created a question for the jury as to whether comment was sufficiently severe); *cf.*

*Woods-Pirozzi v. Nabisco Foods,* 675 A.2d 684 (N.J. Super. Ct. App. Div. 1996) (finding that plaintiff's allegations that supervisor "frequently" said to her "you're a woman and a pain in my ass," called her a "loser" about "once or twice a week" and said "you're so emotional, it must be PMS time" about "twice a month" created a question for the jury as to whether comments were sufficiently severe); *Worthy,* 2024 WL 3326039, at *2 (granting motion to dismiss plaintiff's complaint which alleged plaintiff was called a "fucking anti-vaxxer" because such comments did "not rise to the level of harassment/hostile work environment in violation of the NJLAD").

Plaintiff's TAC, alleging one comment by Fink not even directed to Plaintiff, would not enable a reasonable person to believe the work environment is hostile. *See Nuness v. Simon and Schuster, Inc,* 221 F. Supp. 3d 596, 601 (D.N.J. 2016) ("In evaluating a hostile work environment claim under both [Title VII] and the NJLAD, both the Supreme Court and the Third Circuit have been clear that 'offhand comments, and isolated incidents (unless extremely serious)' are not sufficient." (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998))). Further, the relevant inquiry is "whether the *complained-of conduct* is severe or pervasive, not whether *the effect* on the plaintiff or on the work environment is severe or pervasive." *Incorvati v. Best Buy Co.,* No. 10-1939, 2010 WL 4807062, at *10 (D.N.J. Nov. 16, 2010) (emphasis added) (granting motion to dismiss hostile work environment claim where plaintiff alleged he was ridiculed on "numerous occasions" and received a single email mocking him about having a heart attack and his age because such claims were not the "type of severe conduct that alters the conditions of one's employment or creates an abusive environment"); *Tourtellotte,* 636 F. App'x at 847–48 (affirming dismissal of a hostile work environment claim because "[a]ssessing the larger context does not allow each [plaintiff] to rely on evidence [of conduct directed at others] without demonstrating how conduct directed towards others impacted them in satisfaction of their own *prima facie* case").

As such, Plaintiff's hostile work environment claim fails because it is based on discrete employment acts, or in the alternative, does not plausibly allege severe or pervasive discrimination.

**D.    COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Lastly, Defendants seek to dismiss Plaintiff's claim for intentional infliction of emotional distress ("IIED") because it is preempted by Plaintiff's LAD claims. In the alternative, Defendants claim Plaintiff fails to demonstrate the outrageous conduct necessary to provide a basis for recovery on an IIED claim. (ECF No. 25 at 11-12.) Plaintiff contends that his IIED claims are not preempted at the pleading stage, and that Defendants' vaccine mandate, which forced Plaintiff to "choose between his job and a shot which medically could kill him or cause him serious medical harm," constituted outrageous and extreme conduct to establish an IIED claim. (ECF No. 24 at 28.)

The LAD "preempts any supplemental common law tort action that is based 'on the same factual predicate.'" *Gaines v. United Parcel Serv., Inc.,* No. 13-3709, 2014 WL 1450113, at *5 (D.N.J. Apr. 14, 2014) (quoting *Metzler v. Am. Transp. Grp., LLC,* No. 07-2066, 2008 WL 413311, at *4 (D.N.J. Feb. 13, 2008)). At a motion-to-dismiss posture, courts in this District have routinely dismissed common law claims based on the same factual allegations as a plaintiff's LAD claims. *See e.g., Metzler,* 2008 WL 413311, at *4 (granting a motion to dismiss IIED and negligence claims when they were "based on the same operative facts as…claims under the [LAD]").[16]

---

[16] *See e.g., Brown v. Joel Tanis & Sons, Inc.*, No. 13-2984, 2014 WL 2705262, at *4 (D.N.J. June 13, 2014) (granting a defendant's motion to dismiss plaintiff's IIED claim because it was duplicative of plaintiff's NJLAD claims.); *Valentine v. Bank of Am.,* No. 09-262, 2010 WL 421087, at *6 (D.N.J. Feb. 1, 2020) (denying leave to amend a complaint as futile on the basis that "[w]hen a common law claim of intentional infliction of emotional distress is based on the same allegations supporting [p]laintiff's NJLAD claim, [p]laintiff is not entitled to relief."); *Mardini v. Viking Freight, Inc.,* 92 F. Supp. 2d 378, 384 (D.N.J. 1999) (granting motion to dismiss plaintiff's wrongful discharge claim because such claims were duplicative of plaintiff's claims under the LAD when such claims relied on the same set of facts.); *Everson v. JPMorgan Chase Bank,* No. 12-07288, 2013 WL 1934666, at *2 (D.N.J. May 8, 2013) (dismissing plaintiff's IIED

Plaintiff does not contest that his IIED claims rely on the same set of facts as his LAD claims. (*See* ECF No. 25 at 10-11.) Instead, Plaintiff contends that at this preliminary posture, he should be permitted to plead his IIED claim in the alternative to his LAD claim, citing to a single case where the New Jersey Appellate Division held that an IIED claim should not be submitted to the jury if an LAD claim remained. (ECF No. 25 at 27) (citing *Catalone v. Gilian Instrument Corp.,* 639 A.2d 1341, 1349 (N.J. Super. Ct. App. Div. 1994). However, the Court follows the "lead of cases," cited above, that "have dismissed IIED claims on NJLAD preemption grounds at the motion to dismiss stage." *Gaines,* 2014 WL 1450113, at *6.

In addition, the Court finds that the TAC does not plead a legally sufficient IIED claim. To establish a *prima facie* case for IIED, a plaintiff must show that the defendant: "(1) engaged in intentional conduct (2) that was extreme and outrageous (3) and was the proximate cause (4) of severe distress suffered by the plaintiff." *Quarles v. Lowe's Home Ctrs., Inc.*, No. 04-5746, 2006 WL 1098050, at *4 (D.N.J. Mar. 31, 2006) (citing *Buckley v. Trenton Saving Fund Soc'y*, 544 A.2d 857, 863 (N.J.1988)). For conduct to be extreme and outrageous, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley,* 544 A.2d at 863.

Plaintiff's IIED claim does not allege outrageous, atrocious conduct that caused extreme emotional distress to Plaintiff. While Plaintiff argues that BlackRock's COVID-19 Policy forced him to choose between his job and "a shot which medically could kill him," he cites to no authority finding that such allegations constitute the "extremely rare" case of "conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery on an

---

claim on a motion to dismiss because it was "based on the same operative facts as underlie her NJLAD claim" and thus was duplicative of and preempted by the NJLAD claim).

IIED claim."[17] *Cronin v. Booz Allen Hamilton Inc.,* No. 21-2085, 2022 WL 3357869, at *5 (3d Cir. 2022) (affirming dismissal of IIED claims.) Further, beyond one assertion that Defendants "caused [Plaintiff] severe emotional distress," the TAC is devoid of any facts alleging that Plaintiff suffered "a severe and disabling emotional or mental condition which may be generally recognized and diagnosed by trained professionals" as required to show severe emotional stress. *Turner v. Wong,* 832 A.2d 340, 348 (N.J. Super. Ct. App. Div. 2003). If this claim were not preempted by Counts I, III, and VII, the Court would dismiss it for failure to state a claim.

### E.    INDIVIDUAL LIABILITY

Defendants contend that Fink, as an individual defendant, should be dismissed for the same reasons as stated above, in addition to the fact that Plaintiff "cannot establish individual liability against Fink because it is undisputed that he had no personal involvement in any of the actions challenged by Plaintiff." (ECF No. 25 at 12.) Plaintiff responds that Fink was the "chief enforcer of the discriminatory policies" and "aided" all supervisors in performing the wrongful acts of "compelling them to discriminate against white heterosexual males in all aspects of employment." (ECF No. 24 at 29–30.)

"Individuals may only be held liable under the NJLAD pursuant to an aiding or abetting theory." *Tarr v. Ciasulli,* 853 A.2d 921 (N.J. 2004). Such liability requires that a defendant engage in "active and purposeful conduct," and be "generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance," and "must knowingly and substantially assist the principal violation." *Cicchetti v. Morris Cnty. Sherriffs Office,* 948 A.2d 626, 645 (N.J. 2008). To find an individual liable, the employer must first be found liable. *See*

---

[17] To the contrary, while Plaintiff cites to no cases, Defendants cite to *Cagle v. Weill Cornell Med.,* where the court granted a motion to dismiss plaintiff's IIED claims that were based on her termination of employment for failing to comply with a COVID-19 vaccination requirement. 680 F. Supp.3d 428, 439 (S.D.N.Y. 2023).

*Tarr,* 853 A.2d at 921. Because the Court finds no NJLAD violation with regard to Counts I, II, III, V, VI and VII, Fink cannot be held liable for aiding and abetting on those grounds.

Regarding Counts I, II, V, and VI, Plaintiff fails to allege an aiding and abetting theory against Fink. The Court finds no substance to Plaintiff's allegation that Fink is individually liable as the "chief enforcer" or "architect" of the discriminatory DEI and ESG policies as well as for "aiding" all supervisors at BlackRock by "performing the wrongful act" by causing the supervisors "to discriminate against white heterosexual males in all aspects of employment." (ECF No. 24 at 30.) However, the TAC fails to establish any direct involvement by Fink in Plaintiff's termination. *See Covington v. Twp. of Hillside,* No. 08-3639, 2021 WL 4272880, at *4 (D.N.J. 2021) (dismissing individual defendant where "there are no allegations of specific conduct, knowledge of [plaintiff's] individual circumstances, or other personal involvement" and plaintiff only alleged that individual defendant was involved in the "development, promulgation, and implementation of policies, procedures, and standards for the department").

Further, Plaintiff's TAC alleges only one specific instance of conduct by Fink, his remarks at an internal meeting in 2018 that there were too many "white males in leadership positions." (ECF No. 13 at 35 (citing TAC ¶ 17).) However, Plaintiff fails to allege how Fink's comment in 2018 had any connection to his termination in 2022, when Plaintiff refused to comply with BlackRock's COVID-19 Policy and was promptly terminated thereafter. (TAC ¶ 55); *see Cromwell v. Fichter,* No. 22-3169, 2023 WL 3734969, at *2 (3d Cir. 2023) (affirming dismissal of individual liability claims where "amended complaint failed to allege that [individual defendants] were personally involved in the alleged [violations]"); *see also, Rios v. Meda Pharm, Inc.,* 252 A.3d 982, 984 (N.J. 2021).[18]

---

[18] The Court notes that "cases interpreting the NJLAD have occasionally embraced the 'awkward' theory that a supervisor can aid and abet, not only the conduct of another, but that supervisor's own acts of

For the same reasons as discussed in Section III.D., Plaintiff's IIED claim against Fink, individually, is dismissed.[19]

---

discrimination." *Bradley,* 2019 WL 4316773, at \*5–6 (citing *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999); *Ivan v. Cnty. of Middlesex*, 595 F. Supp. 2d 425 (D.N.J. 2009). While the Court could construe Plaintiff's arguments to raise this claim, he does not explicitly assert such an argument in his brief or cite to any cases. *See N.J. Bldg. Laborers Statewide Ben. Funds v. Perfect Concrete Funding*, No. 10-1540, 2010 WL 2292102, at \*1 (D.N.J. June 2, 2010) (Martini, J.) ("Respondent's brief cites no law: no statutory law, no case law, no scholarly authority. An undeveloped argument in a brief is waived."). Thus, the Court deems this argument waived.

Further, Plaintiff's citation to *Rios v. Meda Pharm., Inc.* for the proposition that Fink, despite not overseeing Plaintiff's day-to-day employment, can still be individually liable for discrimination as a member of "higher-level management," 252 A.3d 982, 984 (N.J. 2021), is unavailing. In *Rios,* the Court denied an employer's motion for summary judgement, finding the supervisor's use of "two offensive slurs" against a Hispanic employee as severe and pervasive enough to establish a hostile work environment claim. *Id.* The Court in *Rios* noted that "the severity of a remark can be 'exacerbated' when it is uttered by a supervisor," and then defined supervisor as those who "direct the day-to-day responsibilities of subordinates" as well as "higher-level management." *Id.* at 12. In this context, the Court in *Rios* discussed the employer's vicarious liability for the personal conduct of the supervisor, not individual liability.

[19] The Court notes generally that several of Plaintiff's claims in the TAC, reflecting his personal belief in the validity of the COVID-19 vaccine and DEI/ESG policies, have no bearing on the legal analysis required to determine whether his TAC sufficiently pleads a plausible claim for relief. Because such information does not go directly to any of the elements necessary to establish a claim for discrimination, disability, or hostile work environment under the LAD or for IIED, the Court does not recite such allegations, but notes here allegations of the TAC fall into this category. (*See* TAC at 21–30.)

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion to Dismiss, (ECF No. 42), is **GRANTED**. Plaintiff's Third Amended Complaint is dismissed without prejudice. An appropriate Order follows.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: September 30, 2024